JOHN J. DWYER & another[1] *vs.* RICHARD J. GALLO & another.[2]

No. 07-P-1242.

Norfolk. June 11, 2008. - December 5, 2008.

Present: MILLS, BROWN, & DREBEN, JJ.

*Zoning,* Person aggrieved, Special permit, Appeal, By-law, Nonconforming use or structure. *Practice, Civil,* Standing.

In a civil action seeking to overturn a special permit that a municipal zoning board (board) granted to the defendant enabling him to construct homes on two adjacent undersized lots, the Superior Court judge's determination that the plaintiff abutters were not persons aggrieved for purposes of G. L. c. 40A, § 17, was clearly erroneous, where the plaintiffs, who presented evidence of concerns about the density of construction next to their home, raised a private property or legal interest protected by the relevant zoning by-law, and the issuance of the zoning relief affected them directly [295-298]; moreover, the judge's finding supporting the board's analysis could not stand, where the defendant's two lots had merged and could not support two residential homes [298].

CIVIL ACTIONS commenced in the Superior Court Department on October 15, 2004.

After consolidation, the case was heard by *Elizabeth B. Donovan,* J.

*Lester E. Riordan, III,* for the defendants.

*William F. O'Connell* for the plaintiffs.

BROWN, J. The zoning board of appeals of Walpole (board) granted zoning relief to Richard J. Gallo on his petitions for construction of two homes on his adjacent, undersized lots. His direct abutters, John and Maura Dwyer, appealed the board's decisions to the Superior Court pursuant to G. L. c. 40A, § 17,

[1]Maura E. Dwyer.

[2]Zoning board of appeals of Walpole (board). The board did not participate in the trial in the Superior Court and did not file a brief or participate in oral argument in this court.

and a judge overturned the board's decisions after determining that Gallo's two lots had merged for zoning purposes. Gallo brought this consolidated appeal from the judgments, arguing, as he did in the Superior Court, that the Dwyers lack standing to pursue a zoning challenge. In addition, Gallo argues that even if the Dwyers have standing, the zoning relief granted is the result of a reasonable interpretation of the Walpole zoning by-law (by-law). We conclude that the Dwyers have standing and that zoning relief was improperly granted.

*Background.* Gallo owns two adjacent lots, lot 1A and lot 2A, deriving from a 1937 subdivision plan that predated the 1956 adoption of the by-law. The two lots front on Common Street in the "Residential B" zoning district of Walpole. The parcels have been held in common ownership at least since 1945. Lot 1A, containing 12,918 square feet and 71.42 feet of frontage, has never been improved and abuts the Dwyers' property on one side and lot 2A on the other.[3] Lot 2A, containing 13,418 square feet and 71.94 feet of frontage, was improved in 1932 with a home in which Gallo currently resides.

1. *The zoning provisions.* Since at least 1956, Walpole's zoning by-law has required 20,000 square feet and 125 feet of frontage for buildable lots in the residential B zoning district. When the by-law was adopted in 1956, section VI-6 provided that "a lot, track or parcel laid out and recorded prior to the effective date of the applicable area and frontage requirement hereof, and not, on said effective date, adjoining other land of the same owner available for use in connection therewith, may be: (1) divided into two lots where, each lot resulting from such division has not less than eighty (80) per cent of the required lot area and frontage . . . ." Lots 1A and 2A have been held in common ownership since 1945. Not only were Gallo's two lots adjoining, but neither met the eighty percent requirement.

Currently, section 3-G of the by-law is entitled "Non-Conforming Uses." Section 3-G(1) provides that "[a]ny lawful building or structure, or use of a building or structure, or land, existing at the time this by-law or any amendment thereto takes

---

[3]The Dwyers' property also fronts on Common Street.

effect may be continued although not conforming to the provisions thereof." Section 3-G(2) of the by-law provides that "[p]re-existing, nonconforming structures, or uses may be extended, altered, changed or rebuilt only by Special Permit from the [board]. Any such rebuilding, change, extension or alteration shall not be more detrimental than the existing nonconforming use to the neighborhood. Exempted from the requirement for a Special Permit are the following: (a) alteration, reconstruction, extension or structural change to a nonconforming single or two-family residential structure where such change does not increase the nonconforming nature of said. . . ."[4]

2. *Zoning relief.* Gallo seeks to construct a new house on lot 1A and remove the existing house on lot 2A and replace it with a new house in a different footprint. For lot 1A, he sought a special permit to construct a single-family dwelling and garage on a lot with inadequate frontage. There is no mention of the area deficiency in the application. For lot 2A, he sought a special permit to allow the removal of the existing dwelling, shed, and garage, and the construction of a new single family dwelling in what is shown on the plans as a different footprint. The Dwyers, unable to attend the public hearing on the zoning relief requests due to a death in the family, sent a letter in protest of construction on lot 1A.

The board voted to allow a special permit for lot 1A, after first determining that a variance was not required because lot 1A retained its pre-existing nonconforming status in that the "subdivision plan from 1937 . . . predates the Walpole Zoning Regulations [adopted] in 1956." The board also determined that

[4]The fourth paragraph of G. L. c. 40A, § 6, contains a "grandfather" provision for "once buildable lots held in separate ownership at the time a zoning change resulted in a particular parcel losing its status as a valid residential lot." *Preston* v. *Board of Appeals of Hull*, 51 Mass. App. Ct. 236, 239 (2001). Specifically, the paragraph provides that "[a]ny increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage." While the town is free to adopt a more liberal grandfather provision, it must do so expressly. *Marinelli* v. *Board of Appeals of Stoughton*, 65 Mass. App. Ct. 902, 903 (2005).

neither a special permit nor a variance is needed for the reconstruction on lot 2A.

Thereafter, the Dwyers appealed from the board's two decisions pursuant to G. L. c. 40A, § 17. In the Superior Court, Gallo asserted that the Dwyers lack standing to appeal the zoning decisions. While conceding that the Dwyers had failed to rebut Gallo's challenge to their standing, the judge nonetheless overturned the board's decisions on the ground that the lots had merged into one lot for zoning purposes. Gallo appeals.

*Discussion. 1. Standing.* "Under G. L. c. 40A, § 17, only a 'person aggrieved' by a decision of a permitting authority has standing to appeal from the decision to the Superior Court." *Sweenie* v. *A.L. Prime Energy Consultants,* 451 Mass. 539, 543 (2008). A "person aggrieved" is one who suffers a nonspeculative "infringement of his legal rights." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport,* 421 Mass. 719, 721 (1996). Although, as abutters, the Dwyers were entitled to a presumption of standing, that presumption receded when Gallo presented evidence to rebut the presumption, and the Dwyers' standing, as required, was determined on the basis of all the evidence without giving the Dwyers any benefit of the presumption. See *Bedford* v. *Trustees of Boston Univ.,* 25 Mass. App. Ct. 372, 376 (1988).[5] To succeed, the Dwyers must show that the zoning relief granted adversely affected them directly and that their injury is related to a cognizable interest protected by the applicable zoning law. See *Standerwick* v. *Zoning Bd. of Appeals of Andover,* 447 Mass. 20, 31 (2006). "A trial judge's findings of aggrieved person status will not be reversed unless clearly erroneous." *Wells* v. *Zoning Bd. of Appeals of Billerica,* 68 Mass. App. Ct. 726, 731 (2007).

On our review of the record, to the extent that the judge determined that the Dwyers are not persons aggrieved, we conclude that her finding was clearly erroneous. The agreed facts reveal that the Dwyers' property and Gallo's property are located in a neighborhood where construction is already more

[5]Gallo presented evidence that the Dwyers' property would suffer no diminution in value and that, in fact, the value of their property may be enhanced by some $20,000 (owing in substantial part to the replacement of the dilapidated home on lot 2A).

296         73 Mass. App. Ct. 292 (2008)

Dwyer *v.* Gallo.

dense than allowed by the current zoning. We have recognized an abutter's legal interest in "preventing further construction in a district in which the existing development is already more dense than the applicable zoning regulations allow." *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. at 31, quoting from *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55, 58-59 (1992), *S.C.*, 415 Mass. 329, 330 (1993). See *Bertrand* v. *Board of Appeals of Bourne*, 58 Mass. App. Ct. 912, 912 (2003); *McGee* v. *Board of Appeal of Boston*, 62 Mass. App. Ct. 930, 930-931 (2004). The parties submitted a statement of agreed facts at trial indicating that some of the local by-law's purposes are to "prevent the overcrowding of land, lessen[] congestion, [and] avoid[] undue concentration of population," all of which are furthered to some extent by the area and frontage requirements of the by-law. There can be little doubt, then, that the Dwyers have raised a private property or legal interest protected by the zoning by-law. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, supra.

The question becomes whether the issuance of the zoning relief affected the Dwyers directly. Maura Dwyer described the close proximity of lot 1A to her rear deck and sunroom and the loss of privacy that already has resulted from the removal of trees in anticipation of construction on lot 1A. Her previous view of wooded trees has been dramatically altered. This case bears striking similarity to *Bertrand* where we said,

> "[t]he plaintiffs' objections to the variance were based upon the incremental impact upon their property of two houses being built directly behind them, rather than one. They articulated concerns about increased noise, increased artificial light, and decreased backyard privacy. In addition, because of problems they had experienced with their own septic system, they expressed concerns about the environmental implications of two nearby septic systems instead of one.
>
> "As confirmed by the testimony of the building inspector, the grounds for the plaintiffs' objections related directly to the objectives of the density regulation at issue. Especially given the close quarters involved here [construction on

two 20,000 square foot lots rather than the required 40,000 square feet], the plaintiffs' concerns cannot reasonably be characterized as ill-founded or speculative. Accordingly, it was error for the judge to conclude that the plaintiffs lacked standing."

58 Mass. App. Ct. at 912.

Here, Gallo proposes to reconstruct one house and add an additional house next to the Dwyers' home on substantially smaller lots than were involved in *Bertrand.* See *Murray* v. *Board of Appeals of Barnstable,* 22 Mass. App. Ct. 473, 476 (1986) ("[a]butters, owners of property located in the same zoning district — a single-family, one-acre district — had a legitimate interest in preserving the integrity of the district from the intrusion of multi-family housing. Certainly, the interest of at least these plaintiffs was more than a general civic interest in the enforcement of the zoning ordinance"). As close abutters, the direct impacts on the Dwyer property from construction in violation of the density requirements of the by-law are evident as outlined by Maura Dwyer's testimony. For the above reasons, crowding of an abutter's residential property by violation of the density provisions of the zoning by-law will generally constitute harm sufficiently perceptible and personal to qualify the abutter as aggrieved and thereby confer standing to maintain a zoning appeal.

Gallo contends that the Dwyers lack standing because they could not show that the value of their property would be diminished by the two projects and because Gallo, in fact, offered evidence suggesting the value would increase by some $20,000. A diminution in value of the property, however, is not a sine qua non of standing in zoning cases. See *Tranfaglia* v. *Building Commr. of Winchester,* 306 Mass. 495, 503-504 (1940) (zoning legislation "is not designed for the preservation of the economic value of property, except in so far as that end is served by making the community a safe and healthy place in which to live"). Density concerns, on the other hand, are directly protected by the zoning scheme at issue, and the articulated effects on the Dwyers' privacy and use and enjoyment of their property constitute sufficient direct harm to confer standing on them. The Dwyers' fears are neither speculative nor too remote

Dwyer *v.* Gallo.

to make them persons aggrieved. See *Marashlian* v. *Zoning Board of Appeals of Newburyport,* 421 Mass. at 723.

2. *Zoning relief.* There was no legal justification for the zoning relief granted. The judge correctly determined that lots 1A and 2A had merged. "[A]djacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize nonconformities." *Preston* v. *Board of Appeals of Hull,* 51 Mass. App. Ct. 236, 238 (2001), quoting from *Seltzer* v. *Board of Appeals of Orleans,* 24 Mass. App. Ct. 521, 522 (1987). "[This] general rule has been consistently applied, both before and after the enactment of [our current zoning enabling act, St. 1975, c. 808]." *Ibid.,* quoting from Bobrowski, Massachusetts Land Use & Planning Law § 5.3.1, at 199 (1993). Had the town of Walpole intended to eliminate the application of the merger doctrine, clear language was required. *Id.* at 243. Gallo directs us to no language in the by-law that explicitly or implicitly negates application of the merger doctrine to lots that were in existence prior to the adoption of the by-law. The Gallos argue that the board correctly interpreted section 3-G(2) of its by-law as applying to a "pre-existing, non-conforming . . . use," including a pre-existing building lot "reserv[ed] . . . for future development." Thus, notwithstanding the fact that there was no improvement on lot 1A, Gallo would have us interpret the by-law as allowing him to improve the lot with a single-family home because a vacant residential lot constitutes a prior nonconforming "use," and construction on that lot is simply an expansion of the nonconforming use. Nothing in the by-law supports such a tortured interpretation.

Lots 1A and 2A merged many years ago and cannot support two residential homes. The special permit granted for lot 1A cannot stand. The finding that a home may be reconstructed on lot 2A without including the land of lot 1A similarly cannot stand.

*Judgments affirmed.*