ALISON SHEPPARD *vs.* ZONING BOARD OF APPEAL OF BOSTON
& another.[1]

No. 07-P-1673.

Suffolk. December 11, 2008. - April 2, 2009.

Present: KAFKER, GRAHAM, & WOLOHOJIAN, JJ.

*Zoning,* Variance, Person aggrieved.

A Superior Court judge erred in concluding that the plaintiff did not have
standing as a person aggrieved to challenge zoning variances granted to
her neighbor, where the variances exacerbated, in a way that directly
injured the plaintiff, already-existing density problems that the applicable
zoning regulations were meant to address. [11-13]

CIVIL ACTION commenced in the Superior Court Department on
January 21, 1999.

The case was heard by *John C. Cratsley, J.*

*John J. Russell* for the plaintiff.

*Wendy H. Sibbison* for Robert K. McGarrell.

*Suchita B. Desai,* Assistant Corporation Counsel, for zoning
board of appeal of Boston, was present but did not argue.

KAFKER, J. The plaintiff, Alison Sheppard, appeals, pursuant
to § 11 of the Boston zoning enabling act (enabling act), zon-
ing variances granted to her neighbor, Robert K. McGarrell. See
St. 1956, c. 665, §§ 2 et seq., as amended by St. 1993, c. 461,
§§ 2 et seq. Following a bench trial in Superior Court, the
judge ruled Sheppard did not have standing and dismissed her
complaint. On appeal, she argues (1) the trial judge improperly
concluded that she did not have standing; and (2) the variances
granted were illegal.[2]

We summarize the trial judge's findings of fact and supple-

---

[1]Robert K. McGarrell.

[2]Sheppard also challenges a different Superior Court judge's denial of her
motion for summary judgment on these issues. "[T]he denial of motions for

ment where necessary from undisputed record evidence. Sheppard and McGarrell are abutting property owners in the South Boston section of Boston. Sheppard has owned a three-story building and lot at 916-918 East Broadway since 1982. Until 2001, she lived on the first floor and rented out the other two floors.[3] Prior to moving in, Sheppard renovated the first floor to take advantage of light and air behind the house. The rear wall of her first-floor apartment is about twenty feet from the property line. The wall contains a window in the galley kitchen and a window in the living area. The rear wall also contains a door, which leads out to a deck, the edge of which is fourteen feet from the property line. In her back yard is a large tree.

McGarrell purchased the lot at 65 P Street in 1997. The side of his property spans Sheppard's backyard. McGarrell's lot is twenty-six feet wide and one hundred feet deep. When he purchased it, it contained a small, dilapidated home, almost twenty-six feet wide and approximately thirty-nine feet deep. On the side of the house closest to Sheppard's property, there had been an ell that had extended all the way to the property line but ended before it reached Sheppard's lot.[4]

In 1997, McGarrell applied for a permit to gut and rebuild the existing house. Once construction began, however, contractors discovered that the existing supporting beams and concrete foundation would not support a rehabilitated structure. McGarrell then began building a new, larger house without applying for a new permit. He was ordered to halt construction because the structure violated zoning codes. McGarrell subsequently was denied a new permit. He appealed and eventually was granted variances from the zoning board of appeal of Boston (board) regarding lot size, lot width, and front and side yard requirements. Sheppard appealed to the Superior Court, but at some point thereafter, the parties agreed to the dismissal of Sheppard's complaint.

summary judgment[, however,] will not be reviewed on appeal after a trial on the merits." *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 126 (1986).

[3]In November, 2001, Sheppard moved out and began renting out all three floors.

[4]There was also an aboveground basement that extended further into McGarrell's lot and partially across the back of Sheppard's, but due to the slope of the lots it was not tall enough to block her first-floor deck.

In August of 1998, McGarrell applied for a new permit and it was denied. On appeal to the board, McGarrell again obtained the required variances. Sheppard then appealed to the Superior Court.[5] Notwithstanding Sheppard's appeal, McGarrell completed construction in the spring of 1999.[6]

After a bench trial, the judge found, in relevant part, the following facts regarding the new structure:

> "The new structure . . . extends approximately 51 feet deep into the 100 foot lot, about four feet deeper than the [previous] house. The portion of the new structure closest to [Sheppard's] property now rises all three stories high, with not only a basement on the lower level, but with decks on the street level and top floor. . . .

> "The new structure extends in width exactly to the lot's southern property line and is approximately 14 feet from [Sheppard's] back porch and 20 feet from the rear door and windows of [Sheppard's] building. In my view of the properties, I observed that the southwest corner of the new structure where the kitchen is located is directly across from the edge of [Sheppard's] home. The rear decks of the new structure extend several feet further back, with the rear deck wall nearly in line with the rear window to [Sheppard's] living area. . . ."

At trial, Sheppard claimed that the size and the location of the new structure deprived her of light, decreased the rental and property value of her building, increased the risk of fire, decreased her privacy, and increased noise. The judge addressed each of these claims separately and found them all to be without merit. On the issue of light deprivation the judge found that the "amount of sunlight, direct and reflective, entering [Sheppard's] first floor apartment . . . is significant and, thus, not so minimal as to constitute a substantial deprivation of light." The judge further found that Sheppard "cannot blame" McGarrell for the fact that Sheppard's neighborhood already was densely populated, noting that her own upper-floor decks and large tree blocked the light as

---

[5]She also unsuccessfully sought to enjoin construction of the new house.

[6]McGarrell testified on cross-examination that he was given the right to build at his "own risk."

well. The judge also relied on the tree's thick foliage and the already limited privacy available in a densely populated area to reject the privacy argument. In regard to risk of fire, the judge found the new structure safer than the dilapidated structure, despite its closer proximity. Finally, the judge found "speculative and conclusory" the testimony of Sheppard, who was a real estate broker, regarding any decrease in the value of her property.

*Discussion.* For Sheppard to have standing under G. L. c. 40A, § 17, or under § 11 of the enabling act, she must qualify as a "person aggrieved" by a zoning board's decision. "A 'person aggrieved' is one who suffers a nonspeculative 'infringement of [her] legal rights.' " *Dwyer* v. *Gallo*, 73 Mass. App. Ct. 292, 295 (2008), quoting from *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). As an abutter, Sheppard was entitled to a presumption of standing. See *Dwyer, supra.* That presumption, however, was rebutted by Mc-Garrell when he challenged Sheppard's status as an aggrieved person and offered evidence in support of his challenge. *Ibid.* Sheppard therefore was required to "show that the zoning relief granted adversely affected [her] directly and that [her] injury is related to a cognizable interest protected by the applicable zoning law." *Ibid.* See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 554 (1999) (to be aggrieved, party must show that injury is "special and different from the concerns of the rest of the community"). Indeed, this review of standing "does not require that the factfinder ultimately find a plaintiff's allegations meritorious." *Marashlian, supra.* For the following reasons, we conclude that Sheppard met this burden and the trial judge's conclusion to the contrary was clearly erroneous.

An abutter has a well-recognized legal interest in "preventing further construction in a district in which the existing development is already more dense than the applicable zoning regulations allow."[7] *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 31 (2006), quoting from *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55, 59 (1992), *S.C.*,

---

[7]The trial judge did not consider overcrowding and density as independent concerns. He did not recognize that a person whose property is in a district that is already more dense and overcrowded than applicable regulations would allow suffers additional injury when variances allow her to be further boxed in.

415 Mass. 329 (1993). *Dwyer, supra* at 296. As the trial judge observed, Sheppard's neighborhood was already dense and over-crowded.[8] Nevertheless, the variances granted to McGarrell allowed him to increase the length of his house so that the deck extended behind Sheppard's house and blocked her rear living room window. Moreover, McGarrell was permitted to build this extension right along the property line he shares with Sheppard, in violation of multiple zoning requirements. As a result, Sheppard's house, already subject to overcrowding by the buildings flanking its sides, now has another three-story structure fourteen feet behind it, blocking its last relatively open corridor.

This injury relates to density interests protected by applicable zoning laws. As provided in art. 1, the stated purposes of Boston's zoning code include "prevent[ing] overcrowding of land; . . . lessen[ing] congestion in the streets; [avoiding] undue concentration of population; [and providing] adequate light and air." The requirements regarding lot size, lot width, and side yard are intended to further these purposes. See *Dwyer, supra.* As we previously have recognized, "crowding of an abutter's residential property by violation of the density provisions of the zoning by-law will generally constitute harm sufficiently perceptible and personal to qualify the abutter as aggrieved and thereby confer standing to maintain a zoning appeal." *Id.* at 297 (holding plaintiffs had standing where, in already over-dense neighbor-

[8]Sheppard's and McGarrell's houses are located in an R-8 residential zoning district. Article 13 of the Boston zoning code requires a minimum side yard width of ten feet for all lots located in an R-8 district. Article 19 further specifies that within the required side yard, "no structure shall be erected" except for smaller structures such as fences, steps, terraces, open porches, fire escapes, chimneys, gutters, and ornamental features, which, generally, still cannot come within three feet of a side lot line. The trial judge found that "[Sheppard's] parcel, like many others nearby, is narrow and long, with the building spanning most of the width of the property, leaving only narrow walkways on either side," and further described the neighborhood as "an established, densely populated neighborhood of multi-family older row houses, nearly all of which span the entire width of their narrow lots." Regarding the specific lots at issue, the judge found that the buildings flanking Sheppard's house were twelve feet and five feet, respectively, from her building and that the original structure on McGarrell's lot already had "spanned almost every inch of the 26 foot width of the property." These findings demonstrate that the neighborhood was more dense than the applicable regulations would allow because several lots within it violated the side yard requirements of arts. 13 and 19 of the Boston zoning code.

hood, variances would allow house to be built in close proximity to their rear deck and sunroom). See *Chambers* v. *Building Inspector of Peabody*, 40 Mass. App. Ct. 762, 768 (1996) ("we believe that a building located closer than planned to the plaintiff's property line that is eleven percent larger . . . , plus a noisy air conditioner cooling tower located near the plaintiff's property, add up to evidence of aggrievement"); *Bertrand* v. *Board of Appeals of Bourne*, 58 Mass. App. Ct. 912, 912 (2003) ("given the close quarters involved here," plaintiff had standing). This case is no exception.[9]

In sum, the variances granted to McGarrell further exacerbate the density problems the zoning regulations were meant to address in a way that directly injures Sheppard. It was error for the judge to conclude that Sheppard lacked standing. Thus, the judgment dismissing Sheppard's complaint must be vacated and the case remanded for a determination of the legality of the variances.

*So ordered.*

---

[9]Given the size and immediate proximity of McGarrell's home, particularly the overhanging decks, we also consider problematic the judge's conclusion that there is not a substantial interference with privacy and light. The judge arrives at that conclusion by emphasizing that the density of the neighborhood already "substantially limits much of the privacy available" to Sheppard. He also appears to require Sheppard to prove whether "any loss of privacy is greater than the loss of privacy attributable to the location of" other buildings flanking Sheppard's property. The density of the neighborhood, however, is not a ground for reducing Sheppard's right to protect the remaining privacy she does have. Rather, as explained, *supra*, Sheppard has an interest in preventing further intrusions on privacy in a neighborhood that already defies applicable zoning requirements. See *Dwyer*, *supra* at 296. The judge also seems to rely on the tree's thick foliage as protecting that remaining privacy, which obviously varies according to the seasons, as the judge insufficiently recognizes. The judge's findings on loss of light seem similarly problematic, relying on direct and reflective light on a particular day without taking into account seasonal change and emphasizing that "[Sheppard] cannot blame McGarrell or his new structure for the fact that she does not receive additional sunlight in the first floor apartment, as it is low to the ground and often shadowed by the large tree in her small back yard, the deck to the apartment above, and the triple decker buildings closely flanking hers."