Claudia Murrow appeals from a judgment entered by a judge of the Land Court dismissing her complaint on the ground that Murrow lacks standing to contest the special permit issued by the defendant zoning board of appeals of Somerville (board) to the defendant Kevin Emery. Substantially for the reasons stated by the judge in both his summary judgment decision[3] and trial decision, we affirm.
The findings of fact are not challenged on appeal as clearly erroneous, except for one issue discussed infra. Emery proposes to demolish an existing single-family home and replace it with a four-unit (each unit to contain two bedrooms) structure on the locus, 10 Allen Court, Somerville. Three-unit buildings are allowed as of right in the commercial (BA)[4] zoning district in which Emery's property is located, but structures with four to six units are allowed only by special permit.[5] The neighborhood contains a variety of multifamily housing and business uses, consistent with the purpose of the BA zoning district.
Allen Court is a short, narrow, dead-end private road. The width of Allen Court is approximately fourteen feet at its intersection with Park Street and then widens to approximately twenty feet. Conway Park, owned by the city of Somerville (city), abuts the locus to the west. Access to the locus is by Park Street to Allen Court from which residents will access the locus's twenty by sixty-eight foot driveway.
Emery proposes four garaged parking spaces and two parking spaces in the driveway. The driveway is proposed to be located along the east side of the structure in accommodation to the owners of the property across the street who did not want to have cars pass in front of their property to reach the locus's driveway. The proposed structure complies with all zoning requirements including frontage, lot size, ground coverage, floor area ratio, landscaping, parking, height, and setback requirements, and requires no zoning variances.[6]
Murrow owns and resides in one unit of a five-unit condominium building located at 23 Park Street. Murrow's building is north of 7-9 Allen Court and 27 Park Street, both of which are across the street from the locus. The judge found that Murrow is an abutter to an abutter of the locus and that her building is approximately eighty-three feet from the locus. No windows in Murrow's condominium unit face the locus. She accesses her off-street parking space located in front of her building from Park Street between Allen Court and Somerville Avenue. She does not travel on Allen Court to reach her building. The judge found at the summary judgment stage that the area around the locus is densely developed, though it is not clear that the area is denser than the current city ordinance allows.
Murrow raised a number of issues challenging the approval of the special permit for the locus, but after rulings on summary judgment and directed verdict motions, the only issues remaining at the end of trial were whether Murrow had standing to assert traffic and fire-safety concerns and, if so, whether the board properly issued the special permit to Emery. The judge conducted a trial on those remaining issues and took a view. He concluded that Murrow's concerns were insufficient to confer standing on her. We agree.
Discussion. "By enacting a by-law that allows a use as matter of right, the inhabitants of a town have previously resolved, in a legislative sense, considerations of comfort, health, safety, and traffic." Duteau v. Zoning Bd. of Appeals of Webster, 47 Mass. App. Ct. 664, 667 (1999). Uses permitted by special permit, on the other hand, are deemed by a zoning ordinance to be potentially acceptable in a zoning district, but only after the review and approval of a permit granting authority, to ensure compatibility with the allowed uses in the area. See ibid. Here, the proposed use required a special permit and thus lies in that intermediate area between uses that are considered so acceptable that no scrutiny is required and uses that are prohibited outright. See Somerville Zoning Ordinance § 5.1.2.
Only "person[s] aggrieved" have standing to challenge a board's decision to grant a special permit. G. L. c. 40A, § 17. Certain owners of nearby property generally enjoy a rebuttable presumption of standing. See Watros v. Greater Lynn Mental Health & Retardation Assn., Inc., 421 Mass. 106, 110-111 (1995). Here, the judge found and Murrow tacitly concedes that any presumption of standing arising from her status as an abutter to an abutter within three hundred feet was negated by evidence introduced by Emery. See Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570, 573 (2016). As a result, Murrow had to "prove standing by putting forth credible evidence to substantiate the allegations. The plaintiff must establish -- by direct facts and not by speculative personal opinion -- that [her] injury is special and different from the concerns of the rest of the community. At that juncture, the jurisdictional issue of standing will be decided on the basis of all the evidence, with no benefit to the plaintiff from the presumption of aggrievement.... Standing essentially becomes a question of fact for the judge." Id. at 573-574 (citations and quotation omitted). Murrow was required to "show that the zoning relief granted adversely affected [her] directly and that [her] injury is related to a cognizable interest protected by the applicable zoning law." Dwyer v. Gallo, 73 Mass. App. Ct. 292, 295 (2008). See Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 120 (2011).
While the term "person aggrieved" is not to be interpreted narrowly, Jepson v. Zoning Bd. of Appeals of Ipswich, 450 Mass. 81, 93 (2007), in order to have standing to appeal from the board's grant of a special permit, Murrow must demonstrate "more than minimal or slightly appreciable harm." Kenner, 459 Mass. at 121. "The adverse effect on a plaintiff must be substantial enough to constitute actual aggrievement such that there can be no question that the plaintiff should be afforded the opportunity to seek a remedy." Id. at 122. The Supreme Judicial Court has explained that to establish standing, it is not enough for a plaintiff to simply identify an interest protected by the by-law; the plaintiff "must put forth credible evidence to substantiate claims of injury" to that legal interest. Sweenie v. A.L. Prime Energy Consultants, 451 Mass. 539, 543 (2008), quoting from Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 723 (1996). "A trial judge's findings of aggrieved person status will not be reversed unless clearly erroneous." Dwyer, 73 Mass. App. Ct. at 295, quoting from Wells v. Zoning Bd. of Appeals of Billerica, 68 Mass. App. Ct. 726, 731 (2007).
Undue concentration of population. Murrow first argues that the judge erred in failing to recognize her standing because she has an interest in "avoid[ing] undue concentration of population," pursuant to § 1.2 of the general purpose section of Somerville's zoning ordinance. She contends that because the number of units in the proposed structure exceeds the number of units permitted as of right in the zoning district, she has standing to challenge the special permit -- separate and apart from any interest she might have in avoiding traffic congestion or impaired fire safety caused by the proposed structure. She obliquely argues that she raised the "overcrowded population" issue at the summary judgment stage and the judge erroneously rejected it.
At the summary judgment stage, the judge noted Murrow's claims of overcrowding arising from the approved special permit and concluded that Murrow must prove harm from related overcrowding that is (1) not de minimis and (2) particularized to her. The judge noted that "[t]he existence of current overcrowding simply makes it easier for a plaintiff to establish standing based on overcrowding and density concerns" but does not in and of itself confer standing on a plaintiff to challenge any development. The judge then considered the various ways Murrow contended she was injured by a rise in population, including traffic convenience, loss of privacy from trespassers -- both human and pets, increase in noise, enhanced danger from fire, unspecified safety hazards, increased wind, vibration, diminution of property value, and discouragement of housing for persons of all income levels. The judge found that there was a disputed question of fact only on traffic impacts, access for fire and emergency vehicles, noise, and property value, and granted summary judgment to the defendants on the other issues raised.
Murrow had to show that the increase in population would injure her directly. "The language of a bylaw cannot be sufficient in itself to confer standing: the creation of a protected interest (by statute, ordinance, bylaw, or otherwise) cannot be conflated with the additional, individualized requirements that establish standing." Sweenie, 451 Mass. at 545. To have standing, Murrow must demonstrate how her legal interests will be harmed. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 545-546. She must rely on "specific facts to establish perceptible harm." Marashlian, 421 Mass. at 724. On appeal, Murrow does not articulate how many people are likely to reside in the proposed structure and makes no effort to connect the addition of a small number of people to the neighborhood to an injury she will suffer directly.
It is true that we have recognized abutters' "legal interest in 'preventing further construction in a district in which the existing development is already more dense than the applicable zoning regulations allow.' " Sheppard v. Zoning Bd. of Appeal of Boston, 74 Mass. App. Ct. 8, 11-12 (2009), quoting from Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 31 (2006). See Bertrand v. Board of Appeals of Bourne, 58 Mass. App. Ct. 912, 912 (2003) ; Dwyer, 73 Mass. App. Ct. at 295-296. In those cases, however, the plaintiffs were direct abutters and their standing derived from demonstrated incremental impact on identified harms such as noise, decreased privacy, decreased light, and increased artificial light arising from approved construction, which violated the density provisions applicable to the abutting property. See Sheppard, 74 Mass. App. Ct. at 12-13, and cases cited. In other words, it was not enough for a standing analysis to simply say that the density provisions were violated. Similarly, here, it is not enough that the zoning ordinance identifies an interest in preventing undue concentration of population. At least in an urban commercial district where both businesses and housing are allowed and encouraged, it is not sufficient for Murrow to point to a small increase in population stemming from four units of two-bedroom housing to support a contention that the proposed development will result in an "undue concentration of population" and harm her.
Murrow is an abutter to the property across the street from the locus. Her property fronts on a different street than the locus. Her vehicular access is on a different street. The impact of the special permit on Murrow's property are not readily apparent. Murrow's contention that the impact on her is different from the rest of the community because she lives eighty-three feet away is speculative at best.
Fire safety. Although Murrow and other neighbors testified that a fire engine would not be able to traverse Allen Court, the judge heard testimony from the deputy chief of the Somerville fire department, who testified that he had no concerns from a fire safety standpoint. He testified that the proposed development complies with the fire code and will have fire alarms and sprinkler systems in place. He further testified that Allen Court is wide enough to accommodate a fire truck, but not if cars are parked on both sides of it. If vehicles block access to Allen Court, fire trucks would stop on Park Street and the location of fire hydrants and the length of the fire department's hoses would allow sufficient access to the locus. The judge found the deputy fire chief's testimony to be substantiated and persuasive and, in contrast, found Murrow's concerns to be speculative. "[I]t is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence." Picard, 474 Mass. at 575, quoting from New England Canteen Serv. v. Ashley, 372 Mass. 671, 675 (1977). We note, too, that here, the judge had the additional advantage of having viewed the area.
Traffic. The judge made extensive findings on the testimony on the issue of traffic, reviewing at length the testimony of Emery's expert, Murrow, and neighbors who testified on Murrow's behalf. The judge found that "[t]here is no dispute that there is heavy traffic in this area of Park Street leading up to Somerville Avenue, and in the opposite direction towards the [Massachusetts Bay Transportation Authority] MBTA train tracks and Beacon Street, during weekday peak rush hours." The judge credited expert testimony, however, that the proposed project would add only one car in the morning and evening rush hours as compared to the existing conditions. While Murrow contends that the addition of one car is enough to be problematic, the judge noted that she offered no expert or other evidence suggesting that existing conditions simply cannot tolerate even one additional car. We agree with the judge's conclusion, therefore, that Murrow's concerns about traffic impacts are too speculative to grant her standing.
Murrow points to a single finding of the judge that she contends was clearly erroneous. The judge identified a lengthy queue of cars on Park Street from Somerville Avenue back towards the MBTA station and Beacon Street during morning rush hour but later found that there were never more than four vehicles in queue on Park Street. There was testimony that when there is a train crossing on Park Street near Allen Court, it takes thirty seconds for the train to pass, there are never more than four cars in a resulting queue, and there was no impediment to cars traveling into or out of Allen Court even, apparently, when the train was going by. Indeed, the judge found that the queue on Park Street is never more than four cars, but failed to explain that this related only to the area of the train crossing. However, his other findings leave no doubt that the judge well understood that Park Street is very busy during rush hours, and that there is a long line of cars that impedes Murrow's access to her parking space and creates difficult access to main roads. The judge's conclusion that the addition of one car to the current traffic conditions will produce a negligible impact on traffic on Park Street, however, is warranted by the weight of the evidence. The judge's misstatement does not negate the rest of his forty-five page, careful, detailed, and thoughtful decision.[7] ,[8]
Judgment affirmed.

The docket does not reflect that a judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), was entered following the summary judgment decision.

The purpose of the BA commercial district is to "preserve business areas bordering main thoroughfares that are attractive to a wide range of uses, including retail business and services, housing, government, professional and medical offices, and places of amusement. While it is anticipated that most users will arrive by motor vehicle, it is intended that the area should be safe for and conducive to pedestrian traffic." Somerville Zoning Ordinance § 6.1.6(1).

Dwellings with seven or more units are allowed by special permit with site plan review.

The lot size of the locus is 4,942 square feet. There is no minimum lot size in the zoning district.

We note that this court recently issued a decision, Murrow v. Esh Circus Arts, LLC, 93 Mass. App. Ct. 233 (2018) (Murrow I ), in which we affirmed a Land Court judge's determination that Murrow did not have standing to appeal from the board's approval of a modification of a special permit for a property located down the street from her. Many of Murrow's claims in this case were raised and rejected in Murrow I. Of course, Murrow did not have the benefit of that opinion when she brought these claims.

Because we conclude that Murrow does not have standing, we need not reach the additional issues she raised on appeal.