NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-200

CHARLES D. BONANNO, trustee,[1] & another[2]

vs.

ZONING BOARD OF APPEALS OF GLOUCESTER & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Two of the defendants, Joseph and Gloria DiStefano (defendants), own a vacant lot located at 13 Sleepy Hollow Road in the private Hawks section of Wingaersheek Beach in the city of Gloucester (defendants' property).  On November 27, 2018, the building commissioner of Gloucester determined that it was a buildable lot.  On June 13, 2019, the city's zoning board of

---

[1] Of the Ozone Realty Trust.

[2] Allison C. Bonanno, trustee of the Ozone Realty Trust.

[3] Building commissioner of Gloucester; Joseph DiStefano, individually and as trustee of the Joseph DiStefano Revocable Trust dated March 6, 2019; Gloria DiStefano, individually and as trustee of the Gloria L. DiStefano Revocable Trust dated March 6, 2019; Gerald McGovern; and Sheila McGovern.

appeals (ZBA) affirmed the building commissioner's determination (ZBA decision).

The plaintiffs, Charles D. Bonanno and Allison C. Bonanno, as trustees of the Ozone Realty Trust (plaintiffs), own 11R Sleepy Hollow Road (plaintiffs' property), an abutter to the defendants' property. They filed an appeal in the Superior Court, pursuant to G. L. c. 40A, § 17, challenging the ZBA decision. The defendants filed a motion for summary judgment on the ground that the plaintiffs lacked standing to bring an action under G. L. c. 40A, § 17. In a written decision, a judge of the Land Court rejected all but one of the aggrievement claims raised by the plaintiffs to establish standing, as harms that were either not particular to the plaintiffs or too speculative. The judge determined that one of these grounds -- a claim of interference with the plaintiffs' use of their easement -- was sufficiently particular to the plaintiffs, if credited, to confer standing. Accordingly, the judge denied summary judgment on that issue but allowed the defendants' motion in all other respects.

The judge held a trial on the issue of standing. After trial, the judge found that any impact on the plaintiffs' use of their driveway easement caused by the defendants' proposed structure would be de minimis or speculative and therefore did

2

not confer standing.  The judge then dismissed the appeal.  We affirm.

Background.  The parties are well acquainted with the facts as detailed in the judge's thorough decisions and the parties' statements of material facts not in dispute.  Briefly, the defendants seek to build a home on their property, a historically natural, nonconforming vacant lot fronting Sleepy Hollow Road.  The northwest corner of the plaintiffs' property directly abuts the southeast corner of the defendants' property.  The plaintiffs' property is a landlocked "rear" parcel that has access to Sleepy Hollow Road solely by way of an easement twenty feet wide, with ten feet on the northernmost portion, abutting 11 Sleepy Hollow Road, and the remaining ten feet on the southernmost portions of the defendants' property and 13R Sleepy Hollow Road.

The defendants propose to construct a new two-story house on their property.  They plan to put the foundation of the new structure as close to Sleepy Hollow Road and the plaintiffs' shared driveway easement as possible, using superseding setbacks to have ocean views.  The inland side of the proposed structure is four feet from the driveway easement and fourteen feet from the property line.

The plaintiffs use their property as a summer home.  The plaintiffs and their invitees use a variety of passenger

3

vehicles to access the property, including a Toyota Highlander, taxicabs, and other cars belonging to family and friends. Vendors and contractors service the property seasonally using larger-sized vehicles. The plaintiffs do not know whether contractors generally enter the easement by driving forward or by backing into the property. The plaintiffs regularly bring a boat trailer to their property. When leaving the property, the plaintiffs sometimes drive forward onto Sleepy Hollow Road and sometimes back out onto Sleepy Hollow Road.

Due to the current construction fencing in place at the defendants' property, the plaintiffs have to "look through two sides" of the fence when turning onto Sleepy Hollow Road. The fencing does not impair sight lines to Sleepy Hollow Road from the driveway easement. In the four to five years the fence has been up, the plaintiffs have been able to successfully negotiate turning into and out of the driveway.

Two traffic engineers conducted field reviews, analyzed relevant plans, used modeling software to render sight lines, and testified at trial as experts. The experts agreed that passenger vehicles can make a multipoint turn to leave the property driving forward onto Sleepy Hollow Road. Both experts opined that larger vehicles -- including vehicles with trailers, and delivery and service type vehicles such as box trucks -- cannot make multipoint turns in front of the plaintiffs'

4

property.  The judge credited this testimony.  The judge found, with the benefit of a view, that passenger vehicles and smaller trucks that are either driving forward or backing up onto Sleepy Hollow Road can see beyond the defendants' proposed development and will not have their sight lines impaired.

The plaintiffs' expert opined that the location of the proposed structure will only impact the sight lines of larger nonpassenger vehicles, including service vehicles or vehicles with a trailer in tow, and only when they are backing out of the driveway easement onto Sleepy Hollow Road.  The judge found that any harm this might cause to the plaintiffs' use of their driveway easement was speculative.

After trial, the judge dismissed the plaintiffs' appeal. The judge reasoned that the plaintiffs are not persons aggrieved under G. L. c. 40A where their presumption of standing had been rebutted and they failed to demonstrate a specific harm to them that is more than de minimis or speculative.  Allison Bonanno appealed.[4]

Discussion.  Persons aggrieved by a zoning board decision have standing to contest it if they suffer "some infringement of [their] legal rights" that is "more than minimal or slightly appreciable, and the right or interest [is] one that G. L.

---

[4] After judgment entered, a suggestion of death was filed for Charles Bonanno.

5

c. 40A is intended to protect" (quotation and citations omitted). Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 213 (2020).

1. Summary judgment. We review de novo the judge's decision granting summary judgment. Stone v. Zoning Bd. of Appeals of Northborough, 496 Mass. 366, 373 (2025). "Because a judge does not engage in fact finding when ruling on [a motion] for summary judgment, we do not give deference to the judge's decision." 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699 (2012).

Here, the plaintiffs raised issues of density, interference with the use of their easement, pedestrian safety, restricted visibility, and impact on views. The judge rejected all of these claims of aggrievement on summary judgment, except interference with the use of the easement. All of these concerns, except impact on views, are "typical" interests that G. L. c. 40A is designed to protect, Murchison, 485 Mass. at 214, and thus we assume the plaintiffs have met that portion of the standing requirements.[5] However, simply identifying a zoning

---

[5] Concerns about visual impacts do not generally confer standing, unless a town or city specifically defines visual impacts as a protected interest in the ordinance. Martin v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, 434 Mass. 141, 146-147 (2001); Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass. App. Ct. 685, 688 (1994). The judge concluded that the plaintiffs had

violation or an interest protected by G. L. c. 40A, § 17, is not the end of the analysis.

"[E]stablishing standing requires a plaintiff to do more than merely allege a zoning violation." Murchison, 485 Mass. at 214. The plaintiffs must demonstrate that they will be harmed in a manner that is "different from general concerns shared by the rest of the neighborhood." Id. at 215. In short, the plaintiffs must show how the proposed project will directly affect the use and enjoyment of their property. Thus, for example, in Dwyer v. Gallo, 73 Mass. App. Ct. 292, 296-297 (2008), even though abutters had identified the project's violations of the density provisions of the local bylaw, their standing was demonstrated only when they also established direct harm by describing "the close proximity of [the proposed structures] to [their] rear deck and sunroom," the loss of privacy already resulting from preliminary tree clearing, and their impaired views that affected their "privacy and use and enjoyment of their property."

Here, while the plaintiffs articulated concerns protected by G. L. c. 40A, they failed to present any evidence that those

_____

not identified any such protected interest in the ordinance. We agree. Accordingly, their complained-of visual impacts (namely, impact on their views of the sunset) are insufficient to constitute aggrievement.

7

concerns will directly harm their use and enjoyment of their property.  Although as abutters, the plaintiffs enjoyed a presumption of standing, see Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996); Sheehan v. Zoning Bd. of Appeals of Plymouth, 65 Mass. App. Ct. 52, 54 (2005), that presumption of standing has been challenged, and "the question becomes whether the evidence supports the plaintiffs' claims of aggrievement."  Murchison, 485 Mass. at 213.

First, the judge determined, the plaintiffs' claim that pedestrian safety could be impacted by the defendants' development "is not particular to the [plaintiffs] but is rather a harm to a general civic interest that is insufficient to confer standing."  We agree.  See Harvard Sq. Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491, 495 (1989) (general civic interest in enforcement of zoning laws is not enough to confer standing); Murray v. Board of Appeals of Barnstable, 22 Mass. App. Ct. 473, 476 (1986).

Second, the judge saw no evidence that the defendants' proposed structure will cause overcrowding or violate density provisions of the zoning ordinance.  Again, we agree.  See Murchison, 485 Mass. at 214 (plaintiff must show "evidence of an injury particular to the plaintiffs, as opposed to the neighborhood in general, the injury must be causally related to violation of zoning laws, and it must be more than de minimis").

8

The plaintiffs did not produce evidence that the neighborhood is overly crowded or that the defendants' proposed project will materially contribute to any overcrowding, beyond the personal opinions of Charles Bonanno. "This was not enough." Stone, 496 Mass. at 377. See id. (plaintiffs' "personal assessment that noise [from proposed warehouse] . . . will have an impact on the enjoyment of their home" was insufficient to establish standing under G. L. c. 40A). Also, any evidence of overcrowding was not like the testimony offered in Dwyer, 73 Mass. App. Ct. at 297; it "did not demonstrate harm particular to the plaintiffs, different from general concerns shared by the rest of the neighborhood." Murchison, supra at 215.

2. Standing trial. As noted, the judge found that there was a material issue whether the defendants' proposed project would impact the plaintiffs' use of their driveway easement sufficiently to confer standing. Accordingly, he held a standing trial on this issue. In addition to taking testimony from two experts and Charles Bonanno, the judge conducted a view so he could evaluate the impact of the proposed project on the sight lines at the intersection of Sleepy Hollow Road and the driveway easement.

After a trial, "[a] judge's findings of aggrieved [person] status are 'entitled to deference'" (citation omitted). Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of

9

Billerica, 454 Mass. 374, 384 (2009). Indeed, "[w]hether an individual is aggrieved is a question of fact for the trial judge, . . . which should not be reversed unless clearly erroneous" (citations omitted). Sheehan, 65 Mass. App. Ct. at 54-55. Again, any harm to an interest which zoning laws are designed to protect "must be more than de minimis." Murchison, 485 Mass. at 214.

Because the defendants rebutted the plaintiffs' evidence of standing based on alleged interference with their use of their driveway easement, the burden rested with the plaintiffs to "put forth credible evidence to substantiate [their] allegations" of aggrievement. Murchison, 485 Mass. at 215; quoting Marashlian, 421 Mass. at 721.

At a trial, standing is decided on "all the evidence with no benefit to the plaintiffs from the presumption" (citation omitted). Marashlian, 421 Mass. at 721. Although the court does not view claims of aggrievement narrowly, id. at 722, neither conjecture nor speculative personal opinion substitutes for proof. Murchison, 485 Mass. at 215. "[T]he plaintiff's claimed injury must be more than speculative" (quotation and citation omitted). Stone, 496 Mass. at 374.

The plaintiffs contend that the proposed development on the defendants' property will harm their use of the driveway easement because it will obstruct their view of Sleepy Hollow

10

Road as they back out of the driveway. After considering all of the evidence, the judge found that any aggrievement with respect to passenger vehicles and smaller trucks was de minimis, and the claimed aggrievement with respect to nonpassenger vehicles was speculative; as such, the evidence was insufficient to confer standing.

First, the plaintiffs claim that the current construction fence surrounding the defendants' property obstructs visibility at the Sleepy Hollow intersection and interferes with the use of their driveway easement. However, the judge noted that Charles Bonanno had been able to successfully negotiate getting in and out of the driveway in the four to five years the fence had been up. Furthermore, at the view, the judge saw that the fence did not impair sight lines to Sleepy Hollow Road.

Second, the plaintiffs claim that future construction of the defendants' proposed development will impact the plaintiffs' use of their driveway easement. The judge noted that the only evidence the plaintiffs offered in support of this claim was Charles Bonanno's anecdotal recounting of his experience when the abutting rear lot owners performed construction on their property, which he acknowledged was a "different situation." The judge rejected these concerns because they were entirely speculative. Subjective and unspecific concerns about the possible impairment of interests are insufficient bases for

11

aggrievement.  See Stone, 496 Mass. at 378 ("[n]either speculation nor common sense is sufficient to establish aggrievement"); Murchison, 485 Mass. at 215.

Finally, the plaintiffs claim that the proposed development will impair the visibility of passenger vehicles and larger nonpassenger vehicles backing out of the driveway easement.  The judge noted that both experts agreed that passenger vehicles will be able to see beyond the defendants' proposed development and will not have their sight lines impaired, regardless of whether the passenger vehicles are driving forward onto Sleepy Hollow Road or backing out.

Larger nonpassenger vehicles include landscaping trucks, trucks towing trailers or boats, and other oversized panel trucks.  The plaintiffs did not provide testimony from service truck drivers or other evidence establishing that operators of these vehicles had difficulty viewing oncoming traffic on Sleepy Hollow Road.[6]  Charles Bonanno himself acknowledged that he had entered the driveway easement with his boat trailer driving both forward and in reverse.[7]  Based on the evidence presented, the

---

[6] As noted, the plaintiffs admitted that they did not know whether the landscaper generally enters the easement driving forward or backward into their property.

[7] This admission supports an inference that any large nonpassenger vehicles, including vehicles with trailers, could back into the driveway easement from Sleepy Hollow Road.

12

judge found that the plaintiffs had failed to establish through direct facts that the ability of any nonpassenger vehicles to use the driveway easement will be impaired by the proposed development, current fencing, or future construction. Accordingly, the judge found speculative the plaintiffs' alleged concern that nonpassenger vehicles will have their views obstructed by the proposed development when backing out of the driveway easement onto Sleepy Hollow Road.  See Stone, 496 Mass. at 377-378.

On the record presented, the judge did not clearly err in finding that the plaintiffs failed to articulate a harm, personal to them, that is "more than de minimis," Murchison, 485 Mass. at 214, or beyond "speculative" (citation omitted). Stone, 496 Mass. at 374.

Judgment affirmed.

By the Court (Meade,
  Desmond & Wood, JJ.[8]),

Clerk

Entered:  February 4, 2026.

---

Therefore, to the extent that the project would interfere with the sight lines of such vehicles when they are backing out onto Sleepy Hollow Road, one obvious solution is to back into the driveway easement from Sleepy Hollow Road and depart driving forward.

[8] The panelists are listed in order of seniority.