CUOZZO vs. KRUMSIEK, MISC 17-000466

































 
 PETER CUOZZO and MARY G. CUOZZO, Plaintiffs, v. DAVID KRUMSIEK, DAVID M. BELCHER, and DOUGLAS C. STEBBINS, As They Constitute THE ZONING BOARD OF APPEALS OF THE TOWN OF WESTWOOD; JOY F. COLBY and CHRISTOPHER COLBY, Defendants
 MISC 17-000466 
 JULY 1, 2021
NORFOLK, ss.
PIPER, J.
DECISION














 INTRODUCTION 





 This case is an appeal pursuant to G. L. c. 40A, § 17 of a variance issued by the Westwood Zoning Board of Appeals ("Board") permitting the private defendants Christopher Colby and Joy Colby ("Colbys") to maintain a shed on their property closer to their lot lines than is permitted by the Westwood Zoning Bylaw. Plaintiffs Peter Cuozzo and Mary Cuozzo ("Cuozzos"), who own and reside at the property abutting one of the lot lines encroached upon by the Colbys' shed, claim that the Board's decision issuing the variance does not satisfy the standard required by the bylaw or Chapter 40A, and must be annulled. The Colbys (as well as the members of the Board, who also are defendants, contend both that the Cuozzos do not have standing to object to the decision, and that the variance indeed was properly issued by the Board. 





PROCEDURAL HISTORY 





 On August 21, 2017, pursuant to G. L. c. 40A, §17, the Cuozzos filed a complaint appealing the Board's decision, naming the Colbys and members of the Board as defendants. An initial Case Management Conference was held on September 28, 2017, after which the parties were ordered to participate in a mediation screening. Following the Board's March 23, 2018 motion for summary judgment, the Cuozzos filed a cross-motion for summary judgment on April 3, 2018. The court denied all motions for summary judgment pursuant to Mass. R. Civ. P. 56, ruling that material facts remain in dispute, that undisputed facts support multiple inferences, and that defendants had put forth no direct evidence either to rebut plaintiffs' standing or to show a lack of any plausible claim of an injury of the sort protected by the zoning laws. On September 26, 2018, the Board filed a motion in limine to exclude trial testimony from David Krumsiek, one of the Board's members. The court granted the Board's motion, ruling that members of quasi-judicial bodies are not permitted to testify as to the internal deliberations of the body or its individual members. I conducted a site view on December 19, 2018 in the presence of the parties and counsel for the Board members, and I had the opportunity to see the properties, including the rear yards, of both the plaintiffs and the defendants. This case was tried before the court on March 5, 2019. Following receipt of the parties' post-trial memoranda, closing arguments were scheduled and held. Upon receipt of the transcript of closing arguments, the court took the matter under advisement.





FACTS 





 Based on the submissions of the parties, their admissions, the relevant uncontested facts, the testimony and other evidence introduced at the trial I held, and the inferences I draw from the foregoing, I find and rule as follows: 

1. Peter Cuozzo and Mary Cuozzo purchased their residential lot, located at 17 Sexton Avenue, Westwood, on June 24, 1997. The Cuozzos' property contains 6,000 sq. ft. [Note 2] 





2. Christopher Colby and Joy Colby purchased their residential lot, located at 18 Buckmaster Road, Westwood, in September 1999. The Colbys' property also contains 6,000 sq. ft. The two properties meet at their rear lot lines. When the Colbys purchased their property, already in existence was a dwelling, swimming pool, and shed. The swimming pool and shed were located within the rear setbacks of the Colbys' rectangular-shaped parcel. The records of the Westwood Building Department indicate that no permit was necessary for the construction of the pool in 1997 because of its limited size, measuring 14 feet by 28 feet. [Note 3] 





3. The rear yard of the Colbys' property abuts the rear yard of the Cuozzos' property. [Note 4] 





4. The Colbys renovated their home and the original shed on their property following the issuance of a special permit by the Board in 2006. [Note 5] 





5. A certified plot plan considered in connection with the Colbys' renovation measured the original shed at 6.4' by 8.5' in 2006. The plot plan also identified that "the shed was within 1.8' of the rear setback and 2' of the side setback where 6' are required for a detached accessory structure having a height of less than fifteen feet." [Note 6] I accept and find that this depiction accurately presents the size and position of the original shed. 





6. On May 20, 2007, the Colbys erected a new, larger shed in the same spot as the original. The new shed measures 8 feet by 14 feet with a maximum height of 9 feet, 2 inches. The shed is located 15 inches from the side fence and 13 inches from the rear fence. [Note 7] 





7. The distance between the rear of the Colbys' new shed and the closest façade of the Cuozzos' dwelling is approximately 35 feet. [Note 8] 





8. On July 16, 2015, the Colbys hired an insured tree service company to trim a tree located on the property line between the Colbys' property and the Cuozzos' property. The tree's limbs hung over the Colbys' pool and new shed. The lumber company used a crane to remove substantial parts of the large tree, and then brought those parts to the street in order to break them down for disposal. [Note 9] 





9. Later in the afternoon on July 16, 2015, the Cuozzos noticed a "bright light" in their rear yard. The Cuozzos also observed sawdust sprinkled on the ground, stepped-on grass, and a table relocated in their rear yard. The Cuozzos subsequently called the Westwood Police. [Note 10] 





10. The Westwood Police arrived on the scene. The Westwood Police report concerning the incident stated that three tree limbs were cut from the tree located in the Cuozzos' lot at the property line with the Colbys' property and that another large tree also had been removed. [Note 11] 





11. The Cuozzos claim that the tree, after it was trimmed, as a result no longer provides them screening, including from views of the shed or the fence dividing their property from the Colbys' property. The side of the Colbys' shed on which the shed's doors are located is visible from all levels of the Cuozzos' property, including but not limited to the Cuozzos' rear yard, the Cuozzos' kitchen, and the Cuozzos' second-floor office space. [Note 12] 





12. The tree provided a barrier between the Cuozzos' property and the Colbys' property, and the now-exposed new shed is of substantial impact to the Cuozzos. The Cuozzos claim that, following the trimming of the tree, they have experienced a lifestyle adjustment with respect to their use of their backyard due to the increased prominence of the new shed on the Colbys' property. The close presence of the new shed has halted outdoor activities that the Cuozzos used to enjoy on a daily basis, such as cooking, eating, and playing games like bocce and croquet. They assert that the constant view of the new shed has resulted in "crowding" of the Cuozzos' property and in a decrease in the Cuozzos' reasonable expectation of privacy. [Note 13] 





13. I find that the new shed, as further exposed by the trimming of the tree, has infringed upon the Cuozzos' enjoyment and reasonable use of their property. The Cuozzos intended to renovate their rear yard upon their son's graduation from high school, including plans to plant grass and install a fire pit. Ultimately, the Cuozzos only planted grass because they felt uncomfortable continuing that project due to the proximity of where the fire pit would be in relation to the new shed on the Colbys' property. [Note 14] 





14. There had been no hostile interactions between the Cuozzos and the Colbys since 1999 when the Colbys moved into the neighborhood. [Note 15] 





15. Sometime between July 16, 2015 and July 19, 2015, the Cuozzos hired an arborist to evaluate the tree straddling the property line which had been trimmed by the Colbys. The arborist estimated that the tree would die within three years, and likely would collapse into the Cuozzos' home. The Cuozzos notified the police that the tree would be cut down within three years. On December 14, 2018, the Cuozzos completely removed the dying tree. [Note 16] 





16. Within a week of July 16, 2015, the Cuozzos contacted the town of Westwood's Building Inspector, Joseph Doyle ("Doyle"), inquiring as to the validity of the size and placement of the new shed on the Colbys' property. On August 31, 2015, upon discovering that the new shed was within the setback are required by the bylaws, the Cuozzos submitted a written complaint requesting that Doyle enforce the zoning bylaw as applicable to the shed on the Colbys' property. [Note 17] 





17. On October 27, 2016, Doyle refused to enforce the zoning bylaw because the six-year limitations period to report a violation due to a nonconforming structure had elapsed since the new shed's construction in 2007. Soon after, on November 9, 2016, the Cuozzos provided Doyle with subsequent information and photographs of the new shed on the Colbys' property. Again, Doyle denied enforcement of the zoning bylaw because of lack of definitive proof that the new shed had increased in size after the Colbys' August 28, 2006 special permit application submission. The Colbys' special permit application only listed the original shed's measurements. [Note 18] 





18. The Cuozzos appealed Doyle's decision to the Westwood Zoning Board of Appeals. On March 28, 2017, the Board overturned Doyle's decision, concluding that "since a building permit was not required for reconstruction of the shed due to its size, the determination of a timely request must rely on application of MGL Chapter 40A Section 7's [ten] year period of limitations for parties aggrieved by a zoning violation . . . . " [Note 19] There was no judicial appeal taken from this decision by the Board. As a consequence, whatever arguments might have been advanced by the Colbys as to the timeliness of the Cuozzos' request for enforcement of the zoning law as to the new shed, and as to any lack of ability of the Building Inspector to order relief for the violations asserted by the Cuozzos are no longer in play. The time to have raised those objections would have been at the time of the original request to Doyle for enforcement, before the Board in the original appeal of Doyle's enforcement decision, and, at the latest, in an appeal which might have been taken pursuant to G.L. c. 40A, §17 from the Board's 2017 decision. 





19. According to Westwood's zoning bylaws, both the Cuozzos' and the Colbys' properties are located in the Single Residence C ("SRC") zone. [Note 20] 





20. The zoning bylaws relevant for this enforcement action are those in force as of May 2, 2016. [Note 21] 





21. On April 18, 2017, the Colbys filed an application for a variance with the Board seeking (1) a retroactive special permit/variance for the demolition of the original shed in 2007; (2) retroactive relief for construction of the new shed built in 2007; and (3) retroactive relief for shed within the minimum setback requirement. [Note 22] 





22. Section 5.1 of the zoning bylaw reads, in part: "In all Districts, no building or structure (except for a flag, utility or light pole) or swimming pool shall be constructed so as to be nearer to the street line or nearer to the side lines or rear line of its lot unless its location is in conformance with said Table." [Note 23] 





23. The Table of Dimensional Requirements in § 5.2 lists the Minimum Side Yard Setback in the SRC District as twenty feet and the Minimum Rear Yard Setback in the SRC District as thirty feet. [Note 24] 





24. In the SRC zone, "a portion of any building or structure not exceeding fifteen (15) feet in height shall be set back a minimum of fifteen (15) feet from the side lines of its lot, and a detached accessory building or structure having a height of less than fifteen (15) feet and a front setback of at least one hundred (100) feet shall be set back a minimum of six (6) feet from the sides of its lot." [Note 25] 





25. In the SRC zone, the minimum space between a "detached accessory building or structure having a height less than fifteen (15) feet shall be set back a minimum of six (6) feet from the rear line of its lot." [Note 26] 





26. When the Colbys filed an application for a variance, the Colbys' Property did not abide by Westwood's SRC district zoning bylaws in the following ways: 





 a. A portion of a building or structure not exceeding fifteen feet in height must be set back a minimum of fifteen feet from the side lines of its lot. The new shed located on the Colbys' property is closer than six feet to the side lines of its lot; 





 b. A detached building or structure less than fifteen feet in height must be at least six feet from the rear line of its lot. The new shed located on the Colbys' property is closer than six feet to the rear lines of its lot; and 





 c. The Colbys failed to apply initially for a dimensional variance or special permit during the construction of the new shed in 2007. [Note 27] 





27. The Board held a duly noticed hearing meetings on May 17, 2017 and July 19, 2017 to consider the Colbys' variance application. [Note 28] 





28. The Cuozzos testified that they became concerned for their safety when, during the Board meetings, the Cuozzos became aware that the Colbys stored pool chemicals, a lawn mower, a snow mobile, and gasoline in the new shed on the Colbys' property. [Note 29] 





29. Westwood's Chapter 250 bylaw regarding hazardous materials requires that hazardous materials be stored properly in order "to protect the public health, safety, welfare, and environment . . . ." [Note 30] 





30. The bylaws define "hazardous materials" as "[a] material or combination of materials which, because of its quantity, concentration, or physical, chemical or infectious characteristics, may cause or significantly contribute to an increase in serious or incapacitating illness or pose a substantial present or potential harm to human health, safety or welfare or to the environment when improperly treated, stored . . . or otherwise managed. These materials shall include, but not be limited to . . . any substance defined as "toxic" or "hazardous" under MGL c. 21C and c. 21E . . ." [Note 31] 





31. John Deckers ("Deckers"), Chief of the Westwood Fire Department, was provided with a list of the materials kept in the Colbys' new shed and determined that as long as the materials are stored properly, they present no danger, and that a shed away from a main dwelling is the proper place for their storage. Chief Deckers' testimony is credible and I find that the materials kept in the new shed on the Colbys' property do not pose a danger to the neighborhood, neighbors, or the surrounding general public. [Note 32] 





32. The Board granted the Colbys' variance on August 3, 2017 with the condition that the Colbys plant arborvitae along the property line between the Colbys' property and the Cuozzos' property as courtesy to provide natural screening to the Cuozzos. [Note 33] 





33. On August 21, 2017, the Cuozzos appealed from the Board's issuance of the Colbys' variance. [Note 34] 





DISCUSSION 





 In this case, the Cuozzos appeal the Board's issuance of a variance to the Colbys. The variance retroactively pardoned the location of the Colbys' fully-constructed second shed, which violates the rear and side setbacks on their property. The Cuozzos allege that the Board inappropriately granted the Colbys' variance; they contend that there was here a failure to meet the factors needed for the issuance of a variance set out in the zoning bylaw and Chapter 40A. The Colbys, joined in their defense of this appeal by the defendant Board members, first contend that the Cuozzos are not aggrieved by the decision of the Board, and therefore lack standing to bring a G. L. c. 40A, § 17 appeal; they also argue that issuance of the variance by the Board was proper. 





 A. Standing 





 The preliminary issue the court must consider is whether the Cuozzos have standing to appeal the Board's decision granting the Colbys' variance. G. L. c. 40A, § 17 provides that only "persons aggrieved" have standing to appeal a zoning board of appeals' decision. G. L. c. 40A, § 17; Sweenie v. A.L. Prime Energy Consultants, 451 Mass. 539 , 542 n.9 (2006). It is presumed that "parties in interest" under § 11 of the Zoning Act, including "abutters, owners of land directly opposite on any public or private street or way, and abutters to abutters within three hundred feet of the property line of the petitioner as they appear on the most recent applicable tax list[,]" are "persons aggrieved" with standing to challenge a variance under § 17. See G. L. c. 40A, §§ 11, 17; Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719 , 721 (1996); Murray v. Bd. of Appeals of Barnstable, 22 Mass. App. Ct. 473 , 476 (1986); Marotta v. Bd. of Appeals of Revere, 336 Mass. 199 , 204 (1957). 





 However, defendants may rebut a plaintiff's presumption of standing under § 17 by either (1) demonstrating the plaintiff's claims of aggrievement are not interests protected under the Zoning Act or local zoning bylaws; or (2) presenting credible, affirmative evidence that directly rebuts the plaintiff's presumption of standing. See Mauri v. Zoning Bd. of Appeals of Newton, 83 Mass. App. Ct., 336, 340 (2013); 81 Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692 , 692 (2012); Kenner v. Zoning Bd. of Appeals, 459 Mass. 115 , 118 (2011). For evidence to be credible, it must be both sufficiently qualitative - of a nature that a "reasonable person could rely on to conclude that the claimed injury likely . . . flow[s] from the board's action" - and quantitative - by providing "specific factual support for each of the claims of particularized injury the plaintiff has made." Butler v. City of Waltham, 63 Mass. App. Ct. 435 , 441 (2005). If defendants fail to offer sufficient evidence to rebut the presumption, the plaintiff is deemed to have standing. See 81 Spooner Road, 461 Mass. at 701. However, if defendants successfully rebut plaintiffs' presumption of standing, then "the burden rests with the plaintiff to prove standing [i.e., aggrievement], which requires that the plaintiff 'establish - by direct facts and not by speculative personal opinion - that his injury is special and different from the concerns of the rest of the community.'" Kenner, 459 Mass. at 118, quoting Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20 , 33 (2006). To "conserve scarce judicial resources and guard against unwarranted interference," courts historically have been unwilling to entertain allegations resting on types of aggrievement which fall outside the purpose of zoning bylaws, or rest on merely speculative evidence to provide support of the aggrievement. See Riley v. Janco Cent., 38 Mass. App. Ct. 984 , 985 n.1 (1995); Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427 , 431-432 (1949). 





 It is undisputed that the rear portion of the Cuozzos' property abuts the rear portion of the Colbys' property; thus, the Cuozzos are presumed to have standing to challenge the Board's variance decision. See G. L. c. 40A, §§ 11, 17. To rebut this presumption, the Colbys and the Board must present credible evidence indicating the Cuozzos are not aggrieved. See Kenner, 459 Mass. at 118. 





 The first basis on which the Cuzzos contend that they are aggrieved is that the shed on the Colbys' property presents a fire hazard. Mary Cuozzo testified that, after attending several of the Board's meetings regarding the Colbys' variance, she and Peter Cuozzo became aware of the exact materials that the Colbys stored inside the shed: a lawn mower, a snow mobile, pool chemicals, and gasoline. The Cuozzos grew concerned by the prospect of these materials being stored together in the shed, and claimed that the storage of these materials together, and so close to the property line, amounted to a safety hazard. The Board rebutted the Cuozzos' presumption of standing as to this by presenting credible evidence that the Cuozzos' alleged aggrievement on the ground of fire safety of the materials stored in the shed was completely unfounded. In rebuttal, the Board offered evidence from the Chief of the Westwood Fire Department, John Deckers. I credit Deckers' testimony that the materials in the shed did not pose a safety or fire risk, and that it is perfectly proper for such materials to be stored in a shed apart from the main dwelling. See Murrow v. Emery, 25 LCR 362 , 371 (2017) (Foster, J.), aff'd Murrow v. Emery, 93 Mass. App. Ct. 1119 (2018) (Rule 1:28 Decision) (finding plaintiffs to lack standing based on fire chief's testimony concerning fire safety). Contrast Choate v. Zoning Bd. of Appeals of Mashpee, 67 Mass. App. Ct. 376 , 385-386 (2006) (finding legitimate concern regarding access by emergency vehicles to be grounds for standing). Having rebutted the Cuozzos' presumption of standing on the grounds of fire hazard, the burden shifted to the Cuozzos to establish by credible qualitative and quantitative evidence that the location of the shed causes them injury by sufficiently increasing the risk of fire. The Cuozzos offered no such credible evidence, and I accordingly find that they do not have standing based on the alleged fire hazards posed by the routine storage in the disputed shed of ordinary materials in quantities typical for residential use. 





 This is not, however, the Cuozzos' only argued basis for standing. Although I find that the Board and the Colbys have successfully rebutted the Cuozzos' presumption of standing on the issue of fire safety, the defendants have failed to rebut the Cuozzos' other claim of aggrievement--regarding the effect of overcrowding and increased density. [Note 35] The Cuozzos' claimed aggrievement relating to density affords them the presumption of standing, and they do not need to offer in the first instance any additional evidence relating to increased density on their property; "as abutters with the presumption of standing, articulated particular injuries [ ] need not be further supplemented with such 'credible evidence to substantiate allegations of aggrievement' until after the presumption of aggrieved status has been rebutted." Hurley v. Keohane, 26 LCR 63 , 68 (2018) (Foster, J.), quoting 81 Spooner Road, LLC, 461 Mass. at 703 n.15. The Board and the Colbys not only failed to offer persuasive, credible evidence countering the Cuozzos' concern for increased density, but also failed to demonstrate that the concern of increased density is not an interest protected under the Zoning Act or Westwood's zoning bylaws. 





 The Zoning Act has been interpreted to protect abutters from increases in density and decreases in privacy. See Dwyer v. Gallo, 73 Mass. App. Ct. 292 , 297 (2008). An intention of the Zoning Act, as well as many of the dimensional regulations of towns' zoning bylaws, is to prevent the overcrowding of residential properties by regulating increases in physical density. See Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570 , 574 (2015). Accordingly, "crowding of an abutter's residential property by a violation of the density provisions of the zoning by-law will generally constitute harm sufficiently perceptible . . . to qualify the abutter as aggrieved and thereby confer standing to maintain a zoning appeal." Sheppard v. Zoning Bd. of Appeal of Boston, 74 Mass. App. Ct. 8 , 12 (2009), quoting Dwyer v. Gallo, 73 Mass. App. Ct. 292 , 297 (2008). Here, Westwood's zoning bylaws require the setback minimum of six feet from the rear lot line and fifteen feet from the side lot line for structures which are independent of the primary dwelling in the SRC zone. This setback minimum is precisely the manner of zoning regulation that "serves to address concerns about crowding" and, if violated, may result in an injury conferring standing. O'Connell v. Vainisi, 82 Mass. App. Ct. 688 , 692 (2012). See Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209 , 214 (contrasting lot size and setback violations, which concern density and crowding, with minimum lot width regulations); Betrand v. Board of Appeals of Bourne, 58 Mass. App. Ct. 912 , 912 (2003) (construction of structure close to abutter's property line may be sufficient grounds for aggrievement). 





 The Cuozzos have articulated concern that the new shed has and will continue to affect the use and enjoyment of the Cuozzos' property due to its proximity to the lot line. This is the type of adequate, direct harm which may confer standing, and the defendants have failed to offer credible evidence either to rebut the presumption of standing, or indeed to counter the evidence affirmatively presented by the Cuozzos at trial. See Dwyer, 73 Mass. App. Ct. at 297. The Cuozzos have supported their allegations concerning the effects of increased density with photographic evidence and testimony illustrating the effects of the Colbys' new shed on the Cuozzos' property. The Colbys' new shed is not only inches from the property line and relatively close to plaintiffs' dwelling, but also materially greater in size than the original shed approved by special permit in 2006. Mary Cuozzo testified that after the tree on the property line was trimmed, it exposed the entirety of the Colbys' new shed, making the structure visible from all levels of the Cuozzos' dwelling. The shed indeed is prominently visible to the Cuozzos whenever and wherever they happen to be in the relatively close confines of their rear yard, looming over it, and I find that the shed is visible as well from the interior of the Cuozzo dwelling, in a more impactful way than the smaller predecessor shed. The current shed's distinct presence has resulted in diminished enjoyment of the Cuozzos' backyard space. What was once used for entertainment, eating and drinking, and outdoor enjoyment, is no longer used to the same degree by the Cuozzos, and I accept their testimony that this is, at least in significant part, because of the intrusive nature of the Colbys' new shed. Moreover, plans of renovating the Cuozzos' rear yard have since been postponed and I accept that this is because the Cuozzos felt uncomfortable with the proximity of the new shed positioned close to the rear lot line. 





 The opinion issued within the past year by Supreme Judicial Court in Murchison v. Zoning Board of Appeals of Sherborn, 485 Mass. 209 , 214 (2020), once more emphasizes that a claimed harm related to increased density or decreased privacy "must be more than de minimis," but here I conclude that the effect of the disputed shed on the Cuozzos and their property exceeds that threshold. In Murchison, the properties in question were situated across the street from each other, and the defendant's proposed construction was to be at least 90 feet from the plaintiffs' lot line, 180 feet from the plaintiffs' garage, and even further from the plaintiffs' main house; the Supreme Judicial Court agreed with the conclusion of the Land Court that the plaintiffs in that case would experience an insufficient level of harm, given that the wholesale lack of evidence that the construction would "'shut[ ] off a view,' ... materially affect the plaintiffs' privacy in relation to their home ... or significantly reduce light or air." Id. at 211, 215 (internal citations omitted). The Colbys' construction here stands in stark contrast to the extreme distances and unfounded speculation present in Murchison: the size of the shed in combination with its extreme proximity to both the lot line and the Cuozzos' dwelling greatly exacerbates its effect on crowding and privacy, and produces a density-based injury to the plaintiffs of sufficient degree and intensity to confer standing. 





 Weighing the evidence presented at trial, I accept the testimony of Mary Cuozzo and find that the Colbys' shed contributes to an increase in density in the neighborhood that particularly harms the Cuozzos. Accordingly, the Cuozzos' presumption of standing to challenge the Board's issuance of a variance to the Colbys remains intact, and the court next progresses to consider the Board's decision on its merits. 





B. Merits 





 In evaluating the merits of the Board's decision, the court first must determine whether the Board considered the proper criteria and standards from the statute and bylaws in deciding to issue the variance. See Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68 , 73 (2003). "Assuming that the board has drawn on proper criteria and standards, the court then must determine, on the basis of the facts it has found for itself, whether the board has denied the application by applying those criteria and standards in an 'unreasonable, whimsical, capricious or arbitrary' manner." Id. at 74. 





 In this case, Westwood has incorporated the same statutory conditions laid out in G. L. c. 40A, § 10 into Section 10.4.3 of the town's zoning bylaw. [Note 36] Pursuant to that statute, three conditions must be met for a variance to be issued properly: (1) that there are the unique circumstances relating to the soil condition, shape, or topography of the land that would cause substantial hardship to the land owner if the local bylaw was to be enforced; (2) that desirable relief may be granted without substantial detriment to the public good; and (3) that granting such relief would not substantially derogate from the intent of the local bylaw. G. L. c. 40A, § 10. Because the above conditions are conjunctive, if one of the conditions is not met, a variance cannot be issued. See Holmes v. Guinen, 23 LCR 496 , 499 (2015) (Foster, J.); Planning Bd. of Springfield v. Board of Appeals of Springfield, 355 Mass. 460 , 462 (1969). Due to the demanding nature of these statutory criteria, variances are intended to be granted sparingly. See Mendes v. Board of Appeals of Barnstable, 28 Mass. App. Ct. 527 , 552 (1990). 





 Here, the Colbys requested a retroactive variance for relief from the side and rear setback violation their shed created in their yard. Westwood's zoning bylaw requires structures in the SRC zone to be, at a minimum, 6 feet from the rear property line and 15 feet from the side property line. The Colbys' new shed violates the minimum required setbacks, as the shed is 15 inches from the side property line and 13 inches from the rear property line. 





 The Board invoked the correct standard under the bylaw in evaluating the Colbys' request for a variance. However, turning to the second step of the analytical framework supplied by Britton, the Colbys and the Board have the burden of presenting evidence demonstrating that a rational view of the facts supports the Board's conclusion that all conjunctive elements required for a variance have been met. See Warren v. Board of Appeals of Amherst, 383 Mass. 1 , 10 (1981); Britton, 59 Mass. App. Ct. at 73. The Colbys allege that the in-ground pool in their rear yard constitutes a unique circumstance that alters the topography of the land so that enforcing the zoning bylaw would create substantial hardship for them. The Colbys claim that if issued, their variance would not be of substantial detriment to the general public and the intent of the zoning bylaw would not be diminished. After reviewing the Colbys' application and holding several public hearings, the Board granted the variance. The Board found that there is no other location for the shed in the Colbys' rear yard because literal enforcement of the bylaw would place the shed within the footprint of the in-ground pool. The Board concluded that, by abiding by the literal enforcement of the dimensional requirements, the Colbys would experience substantial hardship moving the shed elsewhere or finding alternative storage solutions for the materials in the shed without disturbing the neighborhood. [Note 37] 





 No rational view of the facts justifies the Board's conclusion that the Colbys satisfied the conditions required under the statute or bylaw. The Board attempted to identify the Colbys' in ground pool and land as so unique that literal enforcement of the bylaw would not only force the shed to be within the footprint of the in-ground pool, but also create substantial hardship for the Colbys to comply with enforcement. However, the inability to fit the shed elsewhere on their lot while maintaining compliance with the bylaw relates not to the shape, soils, or topography of the Colbys' property, but rather to its size. This is not a circumstance "where the irregular perimeter of a parcel would prevent the siting of a building that conforms to existing zoning." Guiragossian v. Board of Appeals of Watertown, 21 Mass. App. Ct. 111 , 116 (1985). Rather, the Colbys simply possess a lot - just 6,000 square feet - that is too small to accommodate a shed in addition to their house and pool. The size of an applicant's lot is not a condition relating to "shape," and does not justify the issuance of a variance. See McCabe v. Zoning Bd. of Appeals of Arlington, 10 Mass. App. Ct. 934 , 934 (1980); Shafer v. Zoning Bd. of Appeals of Scituate, 24 Mass. App. Ct. 966 , 967 (1987); Di Cicco v. Berwick, 27 Mass. App. Ct. 312 , 314 (1989). 





 Nor does the inability to construct a shed result in the manner of hardship required under the law. Even without a shed, the Colbys fully may still "make reasonable use of the lot for the purposes, or in the manner allowed by the zoning bylaw." Guiragossian, 21 Mass. App. Ct. at 116. Furthermore, to the extent that defendants contend that the hardship specifically stems from the presence of the pool - which, in any event, is not itself a condition relating to the soil, shape or topography of the lot - there is a "well-established principle in our cases prohibiting self imposed hardships as a basis for obtaining a variance." Adams v. Brolly, 46 Mass. App. Ct. 1 , 4 (1998). The existence of the pool is not a necessary and inherent condition of the lot, but is an amenity voluntarily added by its owners. A claimed hardship arising from such a voluntary addition is self-created, and cannot justify the issuance of a variance; though the pool may have been installed by a predecessor in title to the Colbys, they purchased the lot with full knowledge of the pool's existence and its effect on the room available to develop the lot further. See Roberts v. Town of Natick Planning Bd., 12 LCR 365 , 369 (2004) (Piper, J.) (restriction voluntarily entered into by plaintiffs' predecessor in title constituted a self-created hardship). 





CONCLUSION 





 I find that no rational view of the facts in the record supports the Board's conclusion that the standards required for the issuance of a variance have been satisfied. Judgment is to enter annulling the Board's decision granting the variance. 





Judgment accordingly. 





FOOTNOTES
[Note 2] Ex. 45 ¶¶ 1, 3. 

[Note 3] Tr. 13:14-15; Tr.42:23-25; Tr. 43:1; Tr. 22:7-20; Tr. 144:6-15; Ex. 45 ¶ 4. 

[Note 4] Tr. 77:13-15. 

[Note 5] Tr. 43:2-8. 

[Note 6] Ex. 2; Ex. 11; Tr. 24:10-17. 

[Note 7] Tr. 43:19-21; Tr. 44:1-5; Tr.97:1-3; Ex. 41 ¶ 3; Ex 42. 

[Note 8] Joint Pre-Trial Memorandum. 

[Note 9] Tr. 44:1-5; Tr. 44:9-10; Ex. 30. 

[Note 10] Tr. 80:16-20, Tr. 81:9-11. 

[Note 11] Tr. 82:14-20. 

[Note 12] Tr. 69:8-14; Tr. 89:16-25; Tr. 101:12-16; Tr. 105:20-25; Tr. 106:1-11. 

[Note 13] Tr. 98:1-11; Tr. 100:17-25; Tr. 101:1-4; Tr. 101:12-19; Tr. 102:6-9; Tr. 102: 10-21; Tr. 127:6-9; Tr. 116:17-20; Ex. 45 ¶ 22. 

[Note 14] Tr. 127:5-14. 

[Note 15] Tr. 43:22-25. 

[Note 16] Tr. 93:2-20; Tr. 116:6-12; Ex. 30 ¶¶ 6-7. 

[Note 17] Tr. 97:19-21; Tr. 98:1-6. 

[Note 18] Tr. 45:24-25; Tr. 46:1; Ex. 14 ¶ 4; Ex. 37 ¶¶ 2-3. 

[Note 19] Tr. 46:2-7; Ex. 2. 

[Note 20] Ex. 14. 

[Note 21] Ex. 54. 

[Note 22] Tr. 46:8-10; Ex. 32. 

[Note 23] Ex. 54 § 5.1 ¶ 1. 

[Note 24] Ex. § 5.2. 

[Note 25] Ex. 54 § 5.3, ¶ 7. 

[Note 26] Ex. 54, § 5.3, ¶ 8. 

[Note 27] Ex. 54 § 5.3 ¶¶ 7-8. 

[Note 28] Ex. 10; Ex. 13. 

[Note 29] Tr. 118:19-22. 

[Note 30] Ex. 34 §§ 250-2, 250-6. 

[Note 31] Ex. 34 § 250-3, ¶ 3. 

[Note 32] Tr. 33:7-34:11; Ex. 40 ¶ 5. 

[Note 33] Tr. 47-48; Tr. 99:12-20; Ex. 1. 

[Note 34] Joint Pre-Trial Memorandum. 

[Note 35] The Cuozzos argue aggrievement founded upon loss of privacy due to the intrusiveness of the Colbys' new shed. Loss of privacy, all alone, is not necessarily a basis for standing, but when "concern for a loss of privacy is tied to an argument that increased density will affect privacy, it may be cognizable injury  ." Walsh v. Town of Dennis Planning Bd., 26 LCR 89 , 94 (2018) (Speicher, J.). See Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209 , 215 (noting that a plaintiff may be aggrieved by a structure that "materially affect[s] the plaintiffs' privacy in relation to their home."). Because loss of privacy is a direct consequence of increased density, it shall be referred to and treated as part of the challenge to the higher density brought about by the new shed's construction. 

[Note 36] Ex. 54. 

[Note 37] Ex. 1, p. 6 ¶¶ 5-6. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.