SUPERIOR COURT 
 
 DIANA GERTSCH, WILLIAM L. LAHEY, and BRETT PRINCE vs. TOWERNORTH DEVELOPMENT, LLC; JOHN E. COUGHLIN; and, others[1] Consolidated with: DIANA GERTSCH, WILLIAM L. LAHEY, and BRETT PRINCE vs. TOWERNORTH DEVELOPMENT, LLC and others[2]

 
 Docket:
 2177CV01100 / 2177CV01178
 
 
 Dates:
 September 29, 2023
 
 
 Present:
 Jeffrey T. Karp
 
 
 County:
 ESSEX
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT TOWERNORTH DEVELOPMENT, LLC’s MOTION FOR SUMMARY JUDGMENT (Paper No. 17)
 
 

 In these consolidated actions, plaintiffs Diana Gertsch (“Gertsch”), William L. Lahey (“Lahey”), and Brett Prince (“Prince”) challenge the decisions of: (a) defendant

--------------------------------------------

[1] Margaret Nelson, Keith Carver, and Michael Davis, as the members of the Essex Zoning Board Of Appeals.

[2] Lisa O'Donnell, Westley Burnham, Matt Greco, S. Sturgis Crocker, and Michael McConnell, as the members of the Essex Planning Board.

-1-

Town of Essex Planning Board (“Planning Board”) to grant a special permit to defendant TowerNorth Development, LLC (“TowerNorth”) regarding its plan to build a 150 foot free standing cell tower (Case No. 2177CV01178); and, (b) defendant Town of Essex Zoning Board of Appeals (“ZBA”) to grant variances to defendant TowerNorth (Case No. 2177CV01100).

On December 9, 2022, the plaintiffs filed an Amended Complaint in Case No. 2177CV01100 (Paper No. 12) asserting in a single count (Count I) that the ZBA’s decision to grant TowerNorth four variances from certain dimensional requirements violates G.L. c. 40A, § 10, because it “was arbitrary, capricious, unreasonable and an abuse of discretion” for several reasons. In the Amended Complaint, the plaintiffs request that the Court annul the ZBA’s decision pursuant to G.L. c. 40A, § 17.
      
On the same date, the plaintiffs also filed an Amended Complaint in Case No. 2177CV01178 (Paper No. 10) asserting in a single count (Count I) that the Planning Board’s decision to grant a special permit to TowerNorth violates G.L. c. 40A, § 9, because it “was arbitrary, capricious, unreasonable and an abuse of discretion” for several reasons. In the Amended Complaint, the plaintiffs request that the Court annul the Planning Board’s decision pursuant to G.L. c. 40A, § 17.
      
On September 19, 2023, the Court conducted a hearing on Defendant TowerNorth Development, LLC’s Motion For Summary Judgment (Paper No. 17) (“Motion”). Generally speaking, TowerNorth argues that summary judgment must enter on the Amended Complaints in both cases because the plaintiffs lack standing under G.L. c. 40A, § 17, to appeal the decisions of the ZBA and the Planning Board. TowerNorth further argues that the decisions must be affirmed because the summary

-2-

judgment record reflects that there are no genuine issues of material fact, and that the decisions are supported by substantial evidence and are not arbitrary, capricious, or otherwise “legally untenable.”

As is fully explained below, the Motion is ALLOWED.

BACKGROUND

The following facts are taken from the parties’ statements of undisputed material facts and the summary judgment record.[3]
      
TowerNorth is a developer of wireless infrastructure. Verizon Wireless, believing that there were wireless coverage gaps in Essex, retained TowerNorth to help identify available and appropriate sites for the installation of a wireless communications tower.

In so doing, TowerNorth identified a commercial property at 73 Eastern Ave., a 22.3 acre parcel, in Essex as a suitable place to construct the tower.[4] This parcel is heavily wooded except for a self-storage facility that is accessed from Route 133.
      
TowerNorth proposed to build a 146 foot high wireless communications tower (“Tower”) and locate it in a 75 foot by 75 foot area at 73 Eastern Ave., which is primarily surrounded by deciduous wooded vegetation. TowerNorth proposed that the site of the Tower would be surrounded by a six foot high chain link fence with barbed wire and a 12 foot wide locked entrance gate. Vehicle access (from Route 133) and connections to utility services to the proposed Tower site would be provided through a 3.04 acre

--------------------------------------------

[3] Additional relevant facts are discussed, infra, in the Court’s Discussion section.

[4] In this area, Eastern Ave. is Route 133, which connects Essex to Gloucester to the north.

-3-

adjacent lot located at 65 Eastern Avenue.[5] Electric and telephone lines would run underground from the Tower to a utility pole located at 65 Eastern Avenue.
      
In 2021, in connection with the construction and operation of the proposed Tower, TowerNorth applied for zoning relief under the Town of Essex Zoning Bylaws (“Bylaws”) (i.e., four variances from the ZBA and a special permit from the Planning Board).
      
TowerNorth’s variance application included, among other things, a radiofrequency report, an alternative site analysis, an environmental sound assessment, a radio frequency exposure report, a real estate valuation report, and photo simulations.[6] During 2021, the ZBA held four public hearings regarding TowerNorth’s variance application. Members of the ZBA conducted an in-person visit to the proposed Tower site at 73 Eastern Ave. in May 2021. Also, the ZBA hired an outside consultant, Isotrope, LLC (“Isotrope”), to peer review TowerNorth’s variance application. Isotope submitted a report to the ZBA dated June 8, 2021 (“Isotrope Report”).
      
The Bylaws require the granting of a Special Permit by the Planning Board to construct and operate a wireless communications tower. TowerNorth’s special permit application included, among other things, the aforementioned reports that TowerNorth

--------------------------------------------

[5] The parcel at 65 Eastern Ave., which abuts Route 133, contains what appears to be a large commercial and/or retail building.

[6] The photo simulations depicted a balloon hovering 150’ over the proposed location of the Tower during daylight hours on a clear day. TowerNorth submitted color photographs of the view of the balloon from numerous surrounding locations, including from the abutting properties; several color aerial photos of the locations of the photographic simulations; and, an affidavit from a photography expert regarding the photographic “balloon test.” Ex. 1(a), pp. 50 - 72 and 254 – 290 (collectively “Balloon Test Documents”).

-4-

submitted to the ZBA with its variance application. The Planning Board held three public hearings in 2021 regarding TowerNorth’s special permit application.
      
In October 2021, the ZBA unanimously approved TowerNorth’s variance application in a written decision. (Ex. 4) (“ZBA Decision”).
      
The ZBA Decision granted TowerNorth variances from four provisions of the Bylaws, as follows: 

1. Section 6-3.4.5© – which prohibits a cell tower from being located closer than two miles from any other tower. The variance is necessary because there is an existing telecommunications tower located approximately 1.7 miles from the proposed site of the Tower.

2. Section 6-3.4.5(e) – which requires that the Tower be set back from the front, rear, and side property lines at a distance equal to at least 125% of the height of the Tower. The variance grants TowerNorth permission to place the Tower at a distance of 121 feet from the nearest property line, rather than the required 187.5 feet.

3. Section 6.3.4.5(g) – which requires that the Tower be located at least 500 feet from the nearest residential structure. The variance allows TowerNorth to place the Tower 379 feet from the nearest such structure.

4. Section 6-3.4.5(h) – which requires that multiple buildings related to the Tower be connected by a common wall. The variance removes this requirement.

ZBA Decision, p. 2 (“Variances”).

In November 2021, the Planning Board unanimously approved TowerNorth’s special permit application in a written decision (Ex. 5) (“PB Decision”) (“Special Permit”).
      
The Special Permit prohibits “[n]ight lighting of the facility . . . except that required for emergencies and maintenance.” PB Decision, p. 3. Moreover, it requires that “all antennae authorized to occupy the tower shall comply with all applicable State and Federal guidelines concerning radio frequency emissions.” Id.

-5-

Gertsch resides at 11R Haskell Court, Essex. She is a nurse practitioner and has two small children, a nine-month old and a four year old. The land between 11R Haskell Court and the site of the proposed Tower is wooded.
      
Lahey resides on a farm located at 64 Eastern Ave., Essex, which is diagonally across the street from 65 Eastern Avenue.

Prince resides at 7 Essex Reach Rd., Essex.

DISCUSSION

As stated, in the Motion, TowerNorth argues it must be granted summary judgment on all courts of the Amended Complaints pending in each case because: (a) the plaintiffs lack standing to appeal the granting of the Variances and the Special Permit under G.L. c. 40A, § 17; and, (b) even if the plaintiffs have standing, the decisions of the ZBA and the Planning Board are supported by substantial evidence.

I. LEGAL FRAMEWORK

A. Summary Judgment Standard

A motion for summary judgment may be granted “if the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass. R. Civ. P. 56©. “The moving party has the burden of demonstrating affirmatively the absence of a genuine issue of material fact on every relevant issue, regardless of who would have the burden on that issue at trial.” Arcidi v. NAGE, Inc., 447 Mass. 616, 619 (2006).

-6-

“While the nonmoving party is ‘not required to set forth [its] entire defense to the [movant’s] claims to defeat a motion for summary judgment, . . . [the nonmovant is], of course, required to produce evidence sufficient to create a genuine dispute of material fact.’ . . . Otherwise, ‘summary judgment, if appropriate, shall be entered against [it].’” Le Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 149 (2023) (citation omitted); see also Polaroid Corp. v. Rollins Envtl. Servs. (N.J.), Inc., 416 Mass. 684, 696 (1993) (party opposing summary judgment must allege specific facts establishing existence of genuine issue of material fact for trial).
      
Moreover, “[i]n deciding a motion for summary judgment, the motion judge must consider all factual allegations, and draw all reasonable inferences therefrom, in favor of the nonmoving party.” Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010). However, although the Court views the evidence in the light most favorable to the non-moving party, it does not weigh evidence, assess credibility, or find facts. Drakopoulos v. United States Bank Nat’l Ass’n, 465 Mass. 775, 788 (2013) (citation omitted).

B. Overview Of Standing To Challenge The Special Permit & Variances

“To have standing to challenge the decision of a municipal zoning authority, a plaintiff must be a person aggrieved Aggrieved person status is jurisdictional.” Murrow v. Esh Circus Arts, LLC, 93 Mass. App. Ct. 233, 234 - 235 (2018) (citations omitted). Stated differently, “the issue of standing is said to be ‘jurisdictional’ in the sense that the plaintiff’s status as an ‘aggrieved person’ is an essential prerequisite to judicial review under G.L. c. 40A, § 17.’” Nickerson v. Zoning Bd. of Appeals, 53 Mass. App. Ct. 680, 681 n.2 (2002) (citations omitted).

-7-

“A ‘person aggrieved’ is one who ‘suffers some infringement of his legal rights.’ . . . Of particular importance, the right or interest asserted by a plaintiff claiming aggrievement must be one that the Zoning Act is intended to protect, either explicitly or implicitly. . . . [The SJC has] not define[d] aggrievement narrowly, . . . but [it] ha[s] stated that ‘[a]ggrievement requires a showing of more than minimal or slightly appreciable harm.’” 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700 (2012) (citations omitted). To be sure, “[d]emonstrating aggrievement requires a plaintiff to show she has suffered a specialized, cognizable injury ‘not merely reflective of the concerns of the community.’” Murrow, 93 Mass. App. Ct. at 235 (citations omitted).
      
“Only one of the [plaintiffs] in a zoning appeal must be an ‘aggrieved’ person under G.L. c. 40A to establish standing to challenge a zoning decision.” 81 Spooner Rd., LLC, 461 Mass. at 697 n.10.

“A plaintiff who is an abutter to the property in question enjoys a presumption that he or she is a ‘person aggrieved.’” Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570, 573 (2016) (citation and quotation omitted). Nevertheless, “[t]he plaintiff always bears the burden of proving aggrievement necessary to confer standing; an abutter’s presumption of standing simply places on the adverse party the initial burden of going forward with evidence.” 81 Spooner Rd., LLC, 461 Mass. at 701.
      
“If a defendant offers enough evidence to warrant a finding contrary to the presumed fact, the presumption of aggrievement is rebutted, and the plaintiff must prove standing by putting forth credible evidence to substantiate the allegations.” Id. at 701 (citations omitted). “In contrast, when a defendant fails to offer evidence warranting a finding contrary to the presumed fact, the presumption of aggrievement is not

-8-

rebutted, the abutter is deemed to have standing, and the case proceeds on the merits.” Id. at 701.

II. TOWERNORTH HAS REBUTTED THE PLAINTIFFS’ PRESUMPTION OF STANDING

There is no dispute that the plaintiffs, as abutters, are entitled to a presumption of standing.[7] However, the parties dispute whether TowerNorth has met its burden to successfully rebut the presumption. As stated, if TowerNorth has failed to meet this burden, “the [plaintiffs are] deemed to have standing, and the case proceeds [to trial] on the merits.” Id. at 701.

As pertinent here, at the summary judgment stage,

[A] defendant can rebut the presumption by showing that, as a matter of law, the claims of aggrievement raised by an abutter, either in the complaint or during discovery, are not interests that the Zoning Act is intended to protect An abutter can have no reasonable expectation of proving a legally cognizable injury where the Zoning Act and related zoning ordinances or bylaws do not offer protection from the alleged harm in the first instance. In such circumstances, the defendant will have rebutted the plaintiff's presumption of standing.

81 Spooner Rd., LLC, 461 Mass. at 702 (citations omitted) (emphasis added).

As stated, a “legally cognizable injury” “must be one that the Zoning Act is intended to protect [against], either explicitly or implicitly.” Id. at 700 (emphasis
added).

--------------------------------------------

[7] TowerNorth argues that Lahey lacks standing as a matter of law because the property where he lives is owned by a trust and not Lahey in his personal capacity. However, TowerNorth cites no zoning-related cases to support this proposition. Instead, it cites, for e.g., a summary process case. S ee e.g., Rental Prop. Mgmt. Servs. v. Hatcher, 479 Mass. 542, 546 (2018) (“Where, as here, the plaintiff is neither the owner nor the lessor of the property, the plaintiff has no standing to bring a summary process action.”). The Court is not aware of any legal authority in the context of a zoning appeal that supports TowerNorth’s argument; therefore, the Court rejects it.

-9-

As the Appeals Court has observed:

Such a protected interest can arise from the [B]y-law’s express language. See, e.g., Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass. App. Ct. 685, 688, (1994) (by-law expressly protected “visual character or quality of the neighborhood”). Such a protected interest can also arise implicitly from the intent of the [B]y-law’s provisions. S ee, e.g., Sheppard v. Zoning Bd. of Appeal of Boston, 74 Mass. App. Ct. 8, 12 (2009) (“The requirements regarding lot size, lot width, and side yard are intended to further [the general purposes of the by-law]”).

Marhefka v. Zoning Bd. of Appeals, 79 Mass. App. Ct. 515, 518 - 519 (2011) (emphasis added).

Here, the plaintiffs argue that the Tower will cause them to suffer “six distinct harms.” These alleged “distinct harms” are: “[a]esthetics / view, diminished property value, health effects on young children, light, noise, and traffic.” Plaintiffs’ Opposition, p. 3 n.6 (Paper No. 17.3).
      
More specifically, as best as the Court can decipher, the plaintiffs argue that they are concerned that the Tower may: diminish their property values (id. at 6); impair the view from their properties (id. at 6-7); impair “the aesthetics of how [the Tower] would look on the landscape” (id. at 7) (i.e., “the direct visual impact” on their properties (id. at 8)); potentially impact their “health and wellness” (id. at 7), including “concerns about the intensity of the RF radiation on [their] 6 year old [child]” (id. at 8); and, negatively impact their “quality of life due to the aesthetics of having a cell tower that close to [their] house” (I d. at 8).

-10-

“It is not enough simply to raise the issue of standing in a proceeding under § 17. The challenge must be supported by evidence.” Valcourt v. Zoning Bd. of Appeals, 48 Mass. App. Ct. 124, 128 (1999) (citations omitted).[8] Here, TowerNorth points to, inter alia, the following record evidence in challenging the plaintiffs’ presumption of standing: (a) a comprehensive, lengthy real estate valuation report that concludes that the Tower would have no measurable impact on surrounding property values due to proximity or visibility; (b) a radio frequency exposure report, which concludes that the radio frequency exposure to the public surrounding the proposed Tower would fall within the Federal Communication Commission’s guidelines; and, © the Balloon Test Documents regarding a photo simulation that demonstrates the minimal visual impact of the Tower on the surrounding area.
      
With the above principles in mind, the Court must first determine if TowerNorth has shown that the plaintiffs have no reasonable expectation of proving that the Bylaws explicitly or implicitly offer protection from the aforementioned six harms alleged by the plaintiffs “in the first instance.” 81 Spooner Rd., LLC, 461 Mass. at 702.
      
The Court will begin its analysis by addressing whether TowerNorth has shown that the plaintiffs have no reasonable expectation of proving that the Bylaws explicitly (i.e., expressly) offer protection from the aforementioned harms the plaintiffs allege they may suffer from the Tower.

--------------------------------------------

[8] It makes sense that when challenging an opposing party’s standing at summary judgment, the moving party must present evidence that rebuts an abutter’s presumption of standing. Nevertheless, the SJC has stated otherwise. See e.g., Standerwick v. Zoning Bd. of Appeals, 447 Mass. 20, 35 (2006) (“In a summary judgment context, a defendant is not required to present affirmative evidence that refutes a plaintiff's basis for standing It is enough that the moving party ‘demonstrate[], by reference to material described in Mass. R. Civ. P. 56©, unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving’ a legally cognizable injury.”) (citations omitted).

-11-

Here, the ZBA granted the Variances to TowerNorth pursuant to its authority to do so under § 6-9.3.2 of the Bylaws, which reads, in pertinent part as follows:

6-9.3 The [ZBA] shall have the following powers and duties:
. . .

6-9-3.2 To authorize upon appeal in specific cases a variance from the provisions of [the Bylaws]. Such variance may be granted only in accordance with the provisions of Chapter 40A, Section 15,[9] Massachusetts General Laws In granting a variance the [ZBA] shall make findings that the reasons set forth in the application therefore comply with the statute permitting variance.

In granting by unanimous vote any variance, the [ZBA] may prescribe appropriate conditions and safeguards in conformity with the provisions of th[e Bylaws] regarding the location, character, fencing, screening, landscaping or other features as it may deem advisable in furtherance of the intent and purpose of th[e Bylaws].

Bylaws, § 6-9.3.2. See also G.L. c. 40A, § 10 (granting local permitting authority the power to grant a “variance from the terms of the applicable zoning . . . by-law where such permit granting authority specifically finds” certain “circumstances relating to the soil conditions, shape, or topography of . . . ” the land).
      
The Variances that the ZBA granted TowerNorth were variances from the requirements of §§ 6-3.4.5©, (e), (g), and (h) of the Bylaws, which read as follows:

Installations of radio, telecommunications, cellular and television facilities, including freestanding tower type structures, shall be permitted subject to the following requirements, and such other conditions as the special permit granting authority may pose impose under G.L. c. 40A and this Bylaw.

©. No Tower shall be located closer than two (2) miles from any other Tower.[10]

--------------------------------------------

[9] G.L. c. 40A, § 15, sets forth the procedure regarding appeals to the ZBA.

[10] “Tower” is defined by the Bylaws as a “freestanding monopole tower.” Bylaws, § 6-3.4.5(b).

-12-

(e). Towers shall be set back from the front, rear, and side property lines a distance equal to at least one hundred twenty-five (125) percent of the height of the Tower.

(g). All Towers shall be located a minimum of five hundred (500) feet from the nearest residential structure. . . .

(h). Accessory buildings shall be set back from the front, rear and side property lines a minimum of fifty (50) feet. Accessory buildings shall be of a common design and color. A maximum of ten (10) accessory buildings, each limited to four hundred (400) square feet in area and a maximum of ten (10) feet and height may be permitted per Tower. Multiple buildings shall be connected by a common wall.

Bylaw, §§ 6-3.4.5©, (e), (g), and (h).

As for the Special Permit, the Planning Board granted it pursuant to § 6-3.4.2(e) of the Bylaws, which specifically allows, subject to the granting of a special permit, a property to be used for: “Radio, Telecommunications, Cellular, and Television Facilities, [i]ncluding Free Standing Tower Type Structures (subject to the requirements as outlined below).” Bylaws, § 6-3.4.2(e); see also G.L. c. 40A, § 9 (“Special permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein; and such permits may also impose conditions, safeguards and limitations on time or use.”).[11]
      
The granting of the Special Permit by the Planning Board was subject to §§ 6- 3.4.5(a) - (l), which sets forth requirements that must be followed by the project, such as setback and height restrictions, including the above-quoted provisions that are the subject of the Variances.

--------------------------------------------

[11] Section 9 of the Zoning Act also sets forth special permit provisions related to myriad uses of land that are not at issue here, such as “increases in the permissible density of population or intensity of a particular use,” “multi-family residential use” and “shared elderly housing.” G.L. c. 40A, § 9.

-13-

As stated, the plaintiffs argue that the Tower will cause them to suffer “six distinct harms.” These alleged “distinct harms” are: “[a]esthetics / view, diminished property value, health effects on young children, light, noise, and traffic.” Plaintiffs’ Opposition, p. 3 n.6 (Paper No. 17.3). However, as the plaintiffs conceded at the hearing, none of the above-cited provisions of the Bylaws, which the ZBA and Planning Board applied in their decisions, “explicitly . . . offer protection from the alleged harm[s] in the first instance.” 8 1 Spooner Rd., LLC, 461 Mass. at 702.
      
In fact, the only provision of the Bylaws or the Zoning Act that the plaintiffs cite in their memorandum in opposition to the Motion to support their contention that the Tower will cause them to suffer a legally cognizable injury is § 6-3.5.1©. See § 6-3.5.1© (“The principal areas of concern [in site plan review] are: . . . © to ensure the placement and aesthetics of the proposed development is safe, healthy, and in keeping with the community and neighborhood character so as to avoid substantial detriment to the community and neighborhood.”). However, that provision of the Bylaw pertains to site plan approval and not the approval of special permits or variances, which the Planning Board and ZBA applied in issuing their decisions that are at issue in this case.
      
At the hearing, the plaintiffs argued that § 6-1.3 of the Bylaws also explicitly confers a legally cognizable (protected) interest on them. Section 6-1.3, which is within § 6-1 of the Bylaw entitled “General Provisions,” states as follows:

6-1.3 Purpose

This chapter is enacted in accordance with the provisions of Chapter 40A, Massachusetts General Laws, for the purpose of promoting the health, safety, and welfare of the inhabitants of the town.

Bylaws, § 6-1.3 (emphasis added).

-14-

At most, this provision expresses the Town’s goal of “promoting the health, safety, and welfare” of the community as a whole. Stated differently, this provision of the Bylaws does not confer “a specialized, cognizable [interest] ‘not merely reflective of the concerns of the community.’” Murrow, 93 Mass. App. Ct. at 235 (citations omitted). More importantly, it does not “explicitly . . . offer protection from the alleged harm[s] in the first instance.” 81 Spooner Rd., LLC, 461 Mass. at 702.
      
The Court’s view that the aforementioned “purpose” clause of the Bylaws does not confer standing on the plaintiffs is supported by a close look at the decisions in 81 Spooner Rd., LLC, Kenner v. Zoning Bd. of Appeals, 459 Mass. 115 (2011), and Sheppard.[12]

In 81 Spooner Rd., LLC, the abutters successfully challenged the granting of a building permit to a developer who planned to build a house on a nearby vacant lot in Brookline on the grounds that the house would violate floor-to-area ratio limits set forth in the Brookline zoning bylaws. 81 Spooner Rd., LLC, 461 Mass. at 693 – 694. The SJC ruled “that the [abutters’] testimony clearly indicate[d] that one of their allegations of aggrievement was that construction of the house . . . violated the density provisions of the zoning bylaw.” Id. at 704. The SJC found that that specific aggrievement was expressly addressed by a provision of the Brookline zoning bylaw that “state[d] that the purpose of the bylaw [wa]s to promote ‘public health, safety, convenience, and welfare,’ by, among other things, ‘preventing overcrowding of land.’ One of the ways that the town fulfil[led] this purpose [wa]s by enforcing dimensional requirements, including maximum floor-to-area ratios, on property owners.” Id. at 704, n.17 (emphasis added).

--------------------------------------------

[12] The plaintiffs cite the first two cases in their memorandum in opposition to the Motion.

-15-

In Sheppard, the plaintiff challenged the granting of dimensional variances by the Boston Zoning Board of Appeal to her neighbor. Sheppard, 74 Mass. App. Ct. at 8. The neighbor “was granted variances . . . regarding lot size, lot width, and front and side yard [set back] requirements.” Id. at 9. “Following a bench trial in Superior Court, the judge ruled [the plaintiff] did not have standing and dismissed her complaint.” Id. at 8.

“At trial, [the plaintiff] claimed that the size and the location of the new structure deprived her of light, decreased the rental and property value of her building, increased the risk of fire, decreased her privacy, and increased noise.” Id. at 10. The Appeals Court found that the neighbor had rebutted the plaintiff’s presumption of standing and, thus, the plaintiff was required to show that her “injury [wa]s ‘special and different from the concerns of the rest of the community.’” Id. at 11 (citations omitted).
      
The Appeals Court observed that the trial court found that the plaintiffs’ “neighborhood was already dense and overcrowded,” id. at 12, and that “[a]n abutter has a well-recognized legal interest in ‘preventing further construction in a district in which the existing development is already more dense than the applicable zoning regulations allow.’” Id. at 11. In vacating the judgment dismissing the plaintiff’s complaint, the Appeals Court found that the plaintiff had a legally cognizable “injury [that] relate[d] to density interests protected by applicable zoning laws.” Id. at 12. Further, “the stated purposes of Boston’s zoning code,” which afforded the plaintiff a legally protected interest, expressly “include[d] ‘prevent[ing] overcrowding of land; . . . lessen[ing] congestion in the streets; [avoiding] undue concentration of population; [and providing] adequate light and air.’” Id. (citation omitted).

-16-

Here, although the express purpose of the Bylaws is “to promot[e] the health, safety, and welfare of the inhabitants of the town,” unlike the “purpose” clauses in the Brookline bylaws at issue in 81 Spooner Rd., LLC and the Boston bylaws in Sheppard, the prevention of overcrowding is not expressed as an explicit mechanism to do so.[13] To allow the sweeping, general purposes of the Bylaws (i.e., promotion of health, safety, and welfare) “[t]o confer standing in such circumstances would permit any plaintiff to make an ‘end run’ around the rigorous standing requirements [the SJC] ha[s] consistently recognized.” Standerwick, 447 Mass. at 31 - 32 (citations omitted).

The plaintiffs cite Kenner for the sweeping proposition that standing regarding an injury to an abutter’s “aesthetic view,” such as allegedly suffered by the plaintiffs, should be decided at trial and not on summary judgment. However, this case further supports the Court’s reasoning that the Bylaws “do not offer [the plaintiffs] protection from the alleged harm in the first instance.” 81 Spooner Rd., LLC, 461 Mass. at 702.

In Kenner, the plaintiffs contested the approval of a special permit granting the defendants the right to construct a building that would be 7 feet taller than the existing building (which would be torn down). Kenner, 459 Mass. at 115 - 116. The plaintiffs argued at trial, inter alia, that the proposed building would obstruct their ocean view and diminish their property value. Id. at 117, 123. The zoning bylaw at issue “state[d] that the board, when deciding whether to grant a special permit, shall consider, among other things, the ‘[i]mpact of scale, siting and mass on neighborhood visual character, including views, vistas and streetscapes.’” I d. at 121 (emphasis added). The

--------------------------------------------

[13] This is likely because overcrowding is not a concern in Essex, unlike Brookline and Boston.

-17-

plaintiffs maintained that this bylaw imparted a “defined protected interest” on them as it related to the visual impact of the proposed building. Id. at 120.

The SJC in Kenner observed that, “[g]enerally speaking, concerns about the visual impact of a proposed structure on an abutting property are insufficient to confer standing However, where a municipality’s zoning bylaw specifically provides that the zoning board of appeals should take into consideration the visual impact of a proposed structure, this ‘defined protected interest may impart standing to a person whose impaired interest falls within that definition.’” Id. at 120 (emphasis added). Nevertheless, the SJC in Kenner disagreed that the bylaw conferred a protected interest on the plaintiffs as it related to the visual impact of the proposed building:

This language does not suggest that the zoning bylaw was designed simply to protect individual homeowners’ views of the ocean from their own property. Rather, § V.B.5 addresses the visual impact of a proposed structure, or of changes to an existing structure, on the visual character of the neighborhood as a whole. Thus, in order for a plaintiff to establish standing based on the impairment of an interest protected by Chatham’s zoning bylaw, the plaintiff would need to show a particularized harm to the plaintiff’s own property and a detrimental impact on the neighborhood’s visual character.

Id. at 121 (emphasis added).[14]

--------------------------------------------

[14] The Court recognizes that its reference to the proposition that the purpose clause of the Bylaws cited by the plaintiffs at the hearing does not show the plaintiffs suffered “a specialized, cognizable injury not merely reflective of the concerns of the community,” is somewhat misplaced because the plaintiffs are not required to make such a showing until TowerNorth rebuts their presumption of standing. See Standerwick, 447 Mass. at 33 (“Once the presumption is rebutted, the burden rests with the plaintiff to prove standing, which requires that the plaintiff ‘establish -- by direct facts and not by speculative personal opinion -- that his injury is special and different from the concerns of the rest of the community.’”). Nevertheless, the proposition is instructive on the issue of whether the Bylaws explicitly offer the plaintiffs protection from the alleged harm they will suffer from the Tower.

-18-

At bottom, TowerNorth has shown through their submissions in the record and otherwise that the plaintiffs have no reasonable expectation of proving that the Bylaws explicitly offer them protection “in the first instance” from any of the aforementioned alleged six harms they claim they may suffer from the granting of the Variances and/or Special Permit. 81 Spooner Rd., LLC, 461 Mass. at 702. See e.g., Martin v. Corp. of Presiding Bishop of the Church of Jesus Christ of Latter Day Saints, 434 Mass. 141, 146 - 147 (2001) (abutters to proposed 83’ church steeple had standing because zoning bylaw required consideration of visual impact of proposed structure); Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass. App. Ct. 685, 688, (1994) (deposition testimony supported reasonable inference that tower would be clearly visible from abutters’ home sufficient to overcome summary judgment on standing where bylaw required Board to find, inter alia, “that the proposed structure will not in any way detract from the visual character or quality of the adjacent buildings, the neighborhood or the town as a whole”).[15] By doing so, TowerNorth has rebutted the presumption of standing enjoyed by the plaintiffs.

--------------------------------------------

[15] As stated, a legally cognizable protected interest may be “implicitly” conferred to an abutter, such as the plaintiffs “from the intent of the [Bylaws’] provisions.” Marhefka, 79 Mass. App. Ct. at 519. Here, the plaintiffs do not argue that the intent of the provisions of the Bylaws at issue offer them protection from the aforementioned six harms they allege they will suffer from the granting of the Special Permit and Variances (and TowerNorth does not argue the inverse proposition). This is likely because, as the Court has concluded after closely examining the Bylaws, nothing in the Bylaws at issue implicitly affords the plaintiffs protection from their alleged harms. See e.g., Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 214 (2020) (“While ‘density, traffic, parking availability, [and] noise’ have been denoted ‘typical’ interests protected by G.L. c. 40A and zoning bylaws, . . . there is nothing to demonstrate that the purpose of Sherborn’s dimensional lot width zoning requirement is to control density or overcrowding generally, or to protect an abutter's interests in particular”).

-19-

II.  WITH THE PRESUMPTION OF STANDING REBUTTED BY TOWERNORTH, THE PLAINTIFFS HAVE FAILED TO SUSTAIN THERE BURDEN TO SHOW THAT THEY HAVE A REASONABLE EXPECTATION OF PROVING THAT THE GRANTING OF THE VARIANCES AND SPECIAL PERMIT MAY CAUSE THEM TO SUFFER FROM A PARTICULARIZED INJURY DIFFERENT FROM THE CONCERNS OF THE REST OF THE COMMUNITY

Now that TowerNorth has rebutted the presumption of standing enjoyed by the plaintiffs, “the burden rests with the plaintiff[s] to prove standing, which requires that the plaintiff[s] ‘establish -- by direct facts and not by speculative personal opinion -- that [their] injury is special and different from the concerns of the rest of the community.’” Standerwick, 447 Mass. at 33. In the summary judgment context, “[o]nce the developer . . . rebut[s] the plaintiffs’ presumption of standing, the plaintiffs [a]re required to . . . meet their burden to establish standing.” Id. at 37. The plaintiffs can do so by showing that they have a reasonable expectation of proving that at least one of them will suffer a legally cognizable injury (or that a genuine issue of material fact regarding same is present in the record).
      
The plaintiffs acknowledge that their expressed concerns about the impact from lights, noise, and traffic are speculative and, consequently, they have no reasonable expectation of proving that these “injur[ies are] special and different from the concerns of the rest of the community.’” Id. at 33.[16]
   
This leaves for the Court’s consideration the plaintiffs’ claims that the Tower will cause adverse “health effects on [their] young children,” impairment of the aesthetics (and views) at their properties, and diminish property values.

--------------------------------------------

[16] To be sure, the Special Permit prohibits night time lighting at the Tower.

-20-

With respect to the alleged health impacts, the plaintiffs point to Gertsch’s deposition testimony. According to her deposition testimony (Ex. 8), Gertsch is a nurse practitioner and, as such, she’s “aware that there are potential health risks” to people that live in the area of a cell tower. She is especially concerned about those health risks on her two young children, who are nine months old and four years old.[17] Nevertheless, notwithstanding her training and experience as a nurse practitioner, Gertsch’s basis of knowledge about potential health risks is her “understanding” from what she’s read in news stories that it “can cause some problems with headaches and by making people violently ill.” She repeatedly acknowledged that “more research [ ] would need to be done to know for sure if that was actually causing their illness.”
      
“On summary judgment, any inference that could be drawn in favor of the nonmoving party ‘must be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture.’” Cesso v. Todd, 92 Mass. App. Ct. 131, 139 (2017) (citation omitted). Gertsch’s deposition testimony regarding the possible health effects of the Tower on her children (or anyone else, for that matter) is based on nothing more than “speculation and conjecture.” More significantly, whether the Tower may cause health problems is something that needs to be shown by expert testimony. The plaintiffs have failed to offer any such evidence in contrast to the radio frequency exposure report provided by TowerNorth wherein an expert concluded that the radio frequency exposure to the public surrounding the proposed Tower would fall within the Federal Communication Commission’s guidelines.

--------------------------------------------

[17] At his deposition, Prince (Ex. 9) testified that he also has concerns about the intensity of the RF radiation on his six year old child.

-21-

Similarly, there is little dispute that the plaintiffs’ evidence of the alleged impairment of the aesthetics and views at their properties, when divorced from the impact of these injuries on the alleged diminishment in their property values, is based on nothing more than “speculation and conjecture.”[18]
      
With this, the plaintiffs final chance to stave off entry of summary judgment against them on the issue of standing is their claim that the Tower’s visual impact and proximity will diminish their property values. In support, the plaintiffs point to evidence in Exhibits 10 – 17. In the Court’s view, the only relevant record evidence offered by the plaintiffs on this issue comes from two sources.
      
First, the Isotrope Report (Ex. 10) states that “residences with million dollar views can be diminished in value by an industrial structure like a cell tower being erected in a location that compromises the view.” Also, the Isotope Report states that when a new tower is placed in such a way that it creates “the sense of looming over residents” or “dominating the experience of a neighborhood,” it may qualify as something that would “impinge on property values.” Even in the light most favorable to the plaintiffs, this evidence does not support the plaintiffs’ claim that the Tower will negatively impact their property values, or that this injury is special and different from the concerns of the rest of the community. These assertions in the Isotrope Report are far from definitive expert opinions, especially in view of the dearth of record evidence that the plaintiffs enjoy “million dollar views” (or even thousand dollar views) or that the proposed placement of

--------------------------------------------

[18] Parenthetically, the plaintiffs unsupported feelings that the Tower may impact their views from their properties stands in stark contrast to the photo simulation evidence regarding the Balloon Test supplied by TowerNorth, which demonstrates the minimal visual impact of the Tower on the surrounding area.

-22-

the Tower among a heavily wooded area will result in a “sense of [it] looming over residents.”
      
Second, the plaintiffs point to the affidavit of Morgan Fennell (Ex. 14), a certified general appraiser wherein she avers that during periods of market appreciation, i.e., a seller’s market, the Tower would not expect to impact property values. However, she opines that, “during periods of market depreciation when supply exceeds demand as in a buyer’s market,” her appraisal analyses “resulted in a significant, discernible negative impact on the plaintiffs properties from the proposed tower.”
      
Here, because the Court must view the evidence in the light most favorable to the plaintiffs, the plaintiffs’ record evidence regarding the potential for a negative impact on their property values from the Tower during a buyer’s market amounts to sufficient “countervailing material[],” Standerwick, 447 Mass. at 35, only if there is any record evidence that the Tower’s neighborhood, or even the town of Essex as a whole, is currently, or is expected to be in the future, a “buyer’s market.” There is no such evidence.[19]
      
More importantly, even if the Fennell affidavit may arguably support the plaintiffs’ claim of injury from the Tower, it will defeat entry of summary judgment against the plaintiffs on the issue of standing only if the diminishment of property values, due to aesthetics or otherwise, is a legally cognizable injury.

--------------------------------------------

[19] Parenthetically, this stands in contrast to TowerNorth’s complete real estate valuation report that concludes that the Tower would have no measurable impact on surrounding property values due to proximity or visibility.

-23-

In Standerwick the SJC observed the following:

A claim of diminution of property values must be derivative of or related to cognizable interests protected by the applicable zoning scheme To untether a claimed diminution in real estate values from an interest the zoning scheme seeks to protect would permit any abutter who claims that any change in property use would diminish the value of property to obtain standing to challenge a zoning decision. A developer may conclusively demonstrate, for example, that an increase of traffic will not adversely impact plaintiffs or their property such that plaintiffs are unable to establish a traffic- related ‘aggrievement.’ The developer did so in this case. But a real estate appraiser may then opine that the increase in traffic will nevertheless cause a property to diminish in value, as the plaintiffs’ real estate appraiser did in this case. To confer standing in such circumstances would permit any plaintiff to make an ‘end run’ around the rigorous standing requirements we have consistently recognized.

Standerwick, 447 Mass. at 31 - 32 (citations omitted).

Here, as shown above, the plaintiffs have not demonstrated that property value is an interest that is protected by the Bylaws. But, more importantly, the plaintiffs have not demonstrated that aesthetics or visual impact of the Tower are interests that are protected by the Bylaws. Thus, a claim of diminution of property values cannot be said to be derivative of, or related to, a cognizable legal injury.
      
Finally, the Court will briefly address a line of cases cited by the plaintiffs in their memorandum “where aesthetic views were at issue [and] standing was determined after trial – not on summary judgment.” Plaintiffs’ Opposition, p. 7.

The first of the four cases is Murchison. There, the plaintiffs “claim[ed] they [we]re aggrieved because the town’s minimum lot width bylaw ‘protects their interest in preventing the overcrowding of their neighborhood and that this interest would be harmed by the proposed development.’” Murchison, 485 Mass. at 213 – 214.

-24-

The SJC rejected that argument for two reasons, the first of which is relevant here:

First, while the plaintiffs have presumptive standing, the presumption may be rebutted by a showing that, as a matter of law, the plaintiffs’ ‘claims of aggrievement are not within the interests protected by the applicable zoning scheme.’ . . . While ‘density, traffic, parking availability, [and] noise’ have been denoted ‘typical’ interests protected by G.L. c. 40A and zoning bylaws, . . . there is nothing to demonstrate that the purpose of Sherborn’s dimensional lot width zoning requirement is to control density or overcrowding generally, or to protect an abutter's interests in particular. . . . Certainly, there is no claim that the neighborhood is ‘already more dense than the applicable zoning regulations allow.’”

I d. at 214 (citations omitted) (emphasis added).

As stated above, like in Murchison, there is nothing in the Bylaws here that demonstrates that the intent of the Bylaws confers a legally protected interest on the plaintiffs.

The second case cited by the plaintiffs is Kenner, which is discussed above.

The third case is Britton v. Zoning Bd. of Appeals, 59 Mass. App. Ct. 68 (2003). In that case, “the Gloucester zoning board of appeals [ ] den[ied] the plaintiffs’ application under G.L. c. 40A, § 6, for a special permit to build an addition to their nonconforming single-family house on their nonconforming lot.” Id. The plaintiffs “appealed to Superior Court where, after trial, judgment entered annulling the board's decision and granting their application.” Id. However, in Britton, standing was not raised as an issue by the parties and was not discussed by the Appeals Court, at all.

The last case cited by the plaintiffs is Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass. App. Ct. 208 (2003). But, in that case the Appeals Court ruled that a subjective concern regarding aesthetic deterioration was not an interest protected by 

-25-

the bylaw or Zoning Act. Id. at 213. Thus, it does not support the plaintiffs’ position in this case.

III. CONCLUSION

In sum, the Motion is ALLOWED as to the plaintiffs’ lack of standing. Summary judgment on standing must be granted to TowerNorth, notwithstanding the plaintiffs’ presumptive standing, because the plaintiffs’ have failed to present sufficient “countervailing materials” in the face of the TowerNorth’s demonstration that the plaintiffs have no reasonable expectation of proving standing at trial.[20]

ORDER

For the above reasons, it is H EREBY ORDERED that Defendant TowerNorth Development, LLC’s Motion For Summary Judgment (Paper No. 17) is ALLOWED and the Amended Complaints in both of these consolidated actions are HEREBY DISMISSED.

@/s/Jeffrey T. Karp
Associate Justice, Superior Court

@September 29, 2023

--------------------------------------------

[20] Given the Court’s ruling that the plaintiffs’ lack standing as a matter of law, the Court does not reach TowerNorth’s argument that the zoning decisions that are at issue must be affirmed because they are supported by substantial evidence and are not the product of arbitrariness, capriciousness, abuse of discretion, error of law, or are otherwise unreasonable. Nevertheless, after thoroughly reviewing the record and the parties’ submissions, the Court has little doubt that TowerNorth’s argument has merit and that the plaintiffs’ record evidence is likely not “sufficient to create a genuine dispute of material fact.’” Le Fort Enters., Inc., 491 Mass. at 149 (citation omitted).